(570 P.2d 1374)

No. 48,887

MARINUS MEYER, *Appellant and Cross-Appellee,* v. DIESEL EQUIP-
MENT COMPANY, INC., *Appellee and Cross-Appellant.*

Opinion filed August 12, 1977.

*Fred A. Beaty* of Wichita, for the appellant and cross-appellee.

*H. W. Fanning* of Kahrs, Nelson, Fanning, Hite and Kellogg, of Wichita, for the appellee and cross-appellant.

Before SPENCER, P.J., PARKS and SWINEHART, JJ.

SWINEHART, J.: This was an action for breach of contract, conversion, and damages for violation of the Kansas Consumer Protection Act. The defendant counterclaimed for monies allegedly due for services rendered pursuant to that contract which plaintiff alleged was breached by defendant.

The trial court found for plaintiff, awarding out-of-pocket ex-

penses caused by the breach of the contract by defendant, but denied damages for conversion. The trial court also found there had been no violation of the Kansas Consumer Protection Act, and accordingly denied a civil penalty and attorney fees. Plaintiff appealed claiming an inadequate award. Defendant cross-appealed claiming the lower court's award was excessive.

Plaintiff Marinus Meyer is the owner of a Kenworth diesel truck. Plaintiff makes his living by contract driving his truck for M. Bruenger Company out of Wichita. Defendant Diesel Equipment Company, Inc., is an authorized distributor of Detroit Diesel-Allison Transmission Division of General Motors. Defendant does business in Wichita.

In February of 1975 plaintiff asked that defendant install an automatic transmission in plaintiff's truck and defendant agreed to do so. The agreed price was $5,000 for parts and not to exceed $2,000 for installation. This type of transmission required a special cooling or piping system, and the agreement called for the installation of a *factory* piping system. Defendant did not have the necessary parts for the factory piping system, so they were placed on order.

In mid-May of 1975 plaintiff received word from defendant that the necessary parts were in and that defendant was ready to install the transmission. Plaintiff took his truck to defendant's service shop for the installation and defendant installed the automatic transmission. At that point, plaintiff was advised that defendant had not received all the factory piping system parts. Since defendant did not have the necessary parts, defendant presented plaintiff with the alternative options of either taking out the just-installed new transmission and replacing it with the old transmission or having the defendant build a custom piping system from scratch. Defendant represented to plaintiff that a custom piping system would be just as good as, if not better than, a factory system. Plaintiff, anxious to have the job completed, opted to have defendant install the custom piping system. However, plaintiff still expected defendant to install a factory piping system when the necessary parts arrived.

Defendant completed the work and plaintiff picked the truck up. Within hours the custom piping system broke, causing damage to the truck's engine. In addition to this breakage plaintiff was required to pay for several minor repair jobs on the custom unit

during the summer of 1975. Plaintiff eventually had to employ another company to install a factory piping system, after which he had no more trouble with the transmission.

Defendant billed plaintiff for $9,251 on the original work, but after plaintiff complained the bill was adjusted to $7,000. In October of 1975 plaintiff paid defendant $5,000 but refused to pay the remaining $2,000 because defendant had not installed a factory piping system.

In January of 1976 plaintiff took his truck to the defendant's place of business for a transmission oil change. When plaintiff called to see if the truck was ready, defendant advised plaintiff that the truck was ready, but that plaintiff would have to bring an additional $2,000 to get the truck back. That $2,000 was the amount defendant felt was yet due on the original contract.

After defendant had retained the truck for some two and one-half weeks, plaintiff brought this action. The trial court immediately arranged for plaintiff to pay $2,000 into the clerk of the court's office so that plaintiff could regain possession of his truck.

After trial the trial court found that the February 1975 agreement was a binding contract; that that contract had not been modified by the parties; and that defendant had breached the contract. The court found damages to be plaintiff's out-of-pocket expenses totaling $1,062.19 ($960.36 for factory piping system; $101.83 for on-the-road repairs) and, accordingly, ordered that $1,062.19 of the $2,000 which plaintiff had deposited with the clerk be returned to plaintiff, while the remainder of that $2,000 went to defendant for services performed under the original contract. The lower court also found that defendant's retention of plaintiff's truck for the purpose of forcing plaintiff to pay the disputed $2,000 was not an unconscionable act in connection with a consumer transaction. Finally, the court found the Kansas Consumer Protection Act was not applicable.

The issues raised on this appeal will be dealt with separately.

The first deals with defendant's contention that the original contract was modified and that the trial judge erred in not so finding. It is defendant's position that when plaintiff allowed defendant to install a custom piping system, he modified the original agreement which called for a factory piping system.

If the original contract was so modified, defendant is not guilty of breach of contract because defendant did install a custom piping system.

Modification of a contract, like the creation of an original contract, requires mutual assent or a meeting of the minds. As stated in *Fast v. Kahan,* 206 Kan. 682, 481 P.2d 958:

". . . One party to a contract cannot unilaterally change the terms thereof. Modification requires the assent of all the parties to the contract. Their mutual assent is as much a requisite in effecting a modification as it is in the initial creation of a contract. Mutual assent may not only be shown by an express agreement, but also may be implied from the circumstances and conduct of the parties. In either case, however, *there must be a meeting of the minds with respect to the proposed modification. . . .*" (Emphasis supplied.) (pp. 684-685.)

The trial court found there was no meeting of the minds as to any modification. The only question, now, is whether that finding was supported by substantial, competent evidence. *City of Council Grove v. Ossmann,* 219 Kan. 120, Syl. 1, 546 P.2d 1399; *Clardy, Administrator v. National Life & Accident Ins. Co.,* 1 Kan.App.2d 1, 5, 561 P.2d 892. Our search of the record indicates that evidence existed showing that plaintiff had at all times believed that defendant would eventually install a factory piping system and that the custom system was only temporary, pending receipt by defendant of the necessary factory system parts. This evidence clearly shows that plaintiff never thought the original contract was modified and that, as far as plaintiff was concerned, defendant was still obliged to install a factory piping system. Thus, substantial and competent evidence exists indicating that there was no meeting of the minds between these parties as to any modification of the original contract. We therefore must affirm the trial court's finding in this regard.

We next examine defendant's assertion that no breach of the contract occurred. There is no dispute but that the original contract called for a factory piping system and that defendant never installed such a system. However, defendant pleads impossibility of performance as excusing the breach. Defendant insists that no damages should be imposed because it was impossible to install the factory piping system without the necessary parts.

Defendant's position lacks merit. Impossibility of performance, recognized in the law as a basis for relief from contractual obligations, is not of the nature contended by defendant. "When one agrees to perform an act possible in itself he will be liable for a breach thereof although contingencies not foreseen by him arise

which make it difficult, or even beyond his power, to perform and which might have been foreseen and provided against in the contract." *White Lakes Shopping Center, Inc., v. Jefferson Standard Life Ins. Co.,* 208 Kan. 121, Syl. 2, 490 P.2d 609.

Defendant contracted to install a factory piping system—an act possible of performance in and of itself. The fact that parts were not available, which made it difficult or even beyond defendant's power to perform the agreement, does not allow defendant to escape liability for the breach. The trial court properly found that defendant had breached the original contract.

We next consider plaintiff's contention that the Kansas Consumer Protection Act (C.P.A.) applied to the facts of this case, and that defendant's conduct in wrongfully retaining plaintiff's truck constituted an unconscionable act as defined by the C.P.A.

The trial court rendered two findings: (1) that defendant's retention of plaintiff's truck was not an unconscionable act; and (2) that the C.P.A. did not apply to the facts of this case.

We cannot agree with the latter finding. The provisions of the C.P.A. apply to "consumer transactions" which are defined as "a sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer . . . by a supplier with respect to any of these dispositions." K.S.A. 50-624(c). By definition, a "consumer transaction" includes the sale of services by a supplier. "Services" are defined in 50-624(h) as "[w]ork, labor and other personal services. . . any other act performed for a consumer by a supplier." A "supplier" means a manufacturer, distributor, dealer, seller, lessor, assignor or other person who, in the ordinary course of business, solicits, engages in, or enforces consumer transactions. K.S.A. 50-624(i). There is no doubt but that defendant was a "supplier" and that the sale and installation of the transmission and piping system constituted a "service." In addition, there was a sale for value in the state of Kansas to a consumer. Thus, a "consumer transaction" as defined at K.S.A. 50-624(c) occurred, and therefore the provisions of the C.P.A. apply.

Looking, then, to the C.P.A.'s provisions on unconscionable acts, the C.P.A. outlaws unconscionable acts or practices on the part of suppliers in connection with consumer transactions. Unconscionable acts violate the C.P.A. whether they occur before, during, or after the consumer transaction. Further, the C.P.A. has

left the "unconscionability" question to be decided by the court. See K.S.A. 50-627.

The trial court concluded that defendant's conduct was not unconscionable. We are not of a mind to now hold that defendant's complained-of conduct was unconscionable as a matter of law. With a concept so nebulous as "unconscionability" involved, it is necessary that a certain amount of leeway be granted trial courts when deciding the unconscionability of acts. Our legislature recognized this and, accordingly, left the unconscionability question to be decided by the court under the peculiar circumstances of each case. Here, there was a bona fide dispute between the parties over what amount, if any, plaintiff yet owed defendant for the transmission installation. Further, though plaintiff may have been injured by such conduct, the evidence indicates the injury to have been minimal and short-lived. Under the facts and circumstances unique to this suit, the lower court was justified in concluding that defendant's conduct was not unconscionable.

This is not to say, however, that we will never determine unconscionability as a matter of law. Instances conceivably may arise where a defendant's conduct is so outrageous and shocking to the conscience as to dictate a finding of unconscionability, regardless of the lower court's finding. However, such a situation does not exist here.

A final point on plaintiff's appeal has to do with the trial court's denial of damages. Plaintiff complains that he was not awarded his damages caused by defendant's two-week retention of his truck. We have examined the only testimony on such damages and conclude that that testimony was too vague and speculative to support any award of damages. At best, the evidence indicated that plaintiff received $650.00 per week gross; but there was no evidence from which plaintiff's actual income could be computed. We find no error on this point.

Defendant has cross-appealed on the monetary damages awarded to plaintiff. The trial court awarded $960.36 which, the trial court found, was plaintiff's expense incurred for having a factory piping system installed by another company. Plaintiff testified the installation cost him $960.36 and then offered into evidence a copy of his bill (Exhibit 1) from Wichita Kenworth, Inc. (the company that installed the factory system) indicating a

total charge of $960.36. The trial court admitted the exhibit into evidence and awarded $960.36 as damages. Defendant maintains this was error because no sufficient foundation existed for the exhibit. We do not agree.

First of all, there was evidence aside from Exhibit 1 indicating what plaintiff had to pay for the installation. Even assuming Exhibit 1 was improperly admitted, the trial court's decision was justified because of that extra-exhibit evidence which supported the judgment.

Second, although Exhibit 1 may have been improperly admitted, we feel that no prejudice resulted to defendant. The admission of the exhibit was harmless error. There is nothing in the record to indicate the $960.36 figure was unreasonable. In fact, that figure seems highly reasonable when contrasted with the $2,000 installation fee defendant wanted to charge plaintiff for the entire transmission system. Defendant failed to offer evidence which would indicate whether Wichita Kenworth's charges were reasonable or not, though defendant could easily have done so.

We have concluded that when the evidence presented below is considered in its entirety, there is sufficient evidence aside from Exhibit 1 to support the court's award. Further, to the extent the trial judge relied upon Exhibit 1 in reaching the award, it was harmless error because there is nothing to indicate the figure of $960.36 was unreasonable.

The judgment is affirmed.