STATE of Alaska, Appellant,

v.

John GROGAN, d/b/a Fairbanks Aircraft
Maintenance, and John
Saxton, Appellees.

No. 5199.

Supreme Court of Alaska.

May 22, 1981.

Thomas R. Wickwire, Asst. Atty. Gen.,
Fairbanks, and Avrum M. Gross, Atty. Gen.,
Juneau, for appellant.

William F. Brattain II, Fairbanks, for appellee Grogan.

No appearance for appellee Saxton.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and SCHULZ, Superior Court Judge.

## OPINION

RABINOWITZ, Chief Justice.

This appeal arises from a consumer protection action filed by the state against John Grogan and John Saxton. The state contended that Grogan and Saxton violated the Consumer Protection Act, AS 45.50.-471–.561, in their aircraft maintenance and repair business transactions with two customers, Larry Prichard and Jerry Landgrebe. The complaint alleged that Grogan and Saxton charged prices exceeding the amounts for which they had contracted to repair those customers' aircraft, did substandard and defective work, and vandalized the customers' aircraft when they refused to pay the entire sums charged.[1] The state sought restitution for Prichard and Landgrebe, civil penalties for each violation, and an injunction prohibiting Grogan and Saxton from engaging in these practices.

At trial, the superior court ruled inadmissible the evidence the state offered of prior acts of vandalism that had occurred to other customers' aircraft when they refused to make full payment to Saxton and Grogan. This evidence was offered to prove that Saxton was the one who had vandalized Prichard's and Landgrebe's aircraft. The superior court subsequently dismissed the state's claims relating to the acts of vandalism, concluding that vandalizing property belonging to a customer is not an unfair trade act or practice under Alaska's Consumer Protection Act. Later in the trial, the court dismissed all of the claims relating to Prichard. It eventually entered a judgment for the state on the restitution claim for Landgrebe. The award, however,

did not include Landgrebe's costs in correcting some of appellees' allegedly defective workmanship. The superior court concluded that evidence of these costs was inadmissible because the corrections were not made until a year and a half after Grogan and Saxton had finished their work on the aircraft. The state appeals from each of these rulings.

### I.

We first consider the state's argument that the superior court erred in its rulings concerning the acts of vandalism. At trial, the state offered to prove that Prichard's aircraft was vandalized by holes being cut in the fuselage fabric. This allegedly occurred four or five days after Prichard informed Grogan and Saxton that he would not pay the balance of his bill and that he had filed a complaint with the attorney general's office against them. The state also offered to prove that, after Landgrebe refused to make further payments on his bill, his aircraft was damaged when someone started the engine and allowed it to taxi out of control until it collided with two other aircraft. The superior court did not allow the state to introduce evidence of these acts because it concluded that vandalizing a customer's property is not a violation of the Consumer Protection Act. We disagree.

AS 45.50.471(a) states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are ... unlawful." We recently held that whether a practice is unfair for purposes of this section is determined by a variety of factors, including:

(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some commonlaw, statutory, or other

---

1. Landgrebe's aircraft was not vandalized until after the state filed its complaint; at trial, the superior court treated the complaint as if it were amended to allege this vandalism for purposes of the state's claim for injunctive relief.

established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers . . . .

*State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 535 (Alaska 1980), *quoting FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45 n.5, 92 S.Ct. 898, 905–906, n.5, 31 L.Ed.2d 170, 179 n.5 (1972).

■ Vandalizing a customer's property is unlawful under AS 11.46.482–.486; it is immoral, unethical, oppressive and unscrupulous; it also causes substantial injury to the customer. We therefore conclude that such conduct is an unfair trade act within the meaning of AS 45.50.471. Thus the superior court erred in dismissing this aspect of the state's case before considering the state's evidence.[2]

■ We conclude that the superior court also erred in not allowing the state to introduce evidence that Saxton had previously vandalized the aircraft of customers who refused to pay their bills in full. This evidence would be inadmissible to prove that Saxton has a character trait of vandalizing aircraft in order to show that he acted in conformity with this character trait. Alaska R.Evid. 404(b). The evidence, however, is admissible for other purposes, "such as proof of motive, opportunity, intent, . . .

identity, or absence of mistake or accident." Alaska R.Evid. 404(b). The state indicated in its pretrial memorandum that its purpose in introducing the evidence of prior acts of vandalism by Saxton was to prove Saxton's motive and identity as the one who vandalized Prichard's and Landgrebe's aircraft. This evidence was relevant to the state's requests for civil penalties and an injunction.

Evidence Rule 403 grants the trial court discretion to exclude relevant evidence "if its probative value is outweighed by the danger of unfair prejudice." It is not entirely clear on what grounds the superior court excluded the evidence of prior acts of vandalism, but we hold that it would be an abuse of discretion to exclude it under Rule 403. The probative value of this evidence to the state's action outweighs the possible prejudice to Grogan and Saxton, in this civil non-jury trial context. *See Coleman v. State*, 621 P.2d 869, 874–76 (Alaska 1980).

## II.

■ We next consider the state's argument that the trial court erred when it dismissed all of the claims relating to Prichard pursuant to Civil Rule 41(b).[3] When the court is the trier of facts it may not weigh the evidence in determining whether to grant a motion for involuntary dismissal;

---

2. There seemed to be some confusion at trial as to whether or not the superior court could order restitution in this action for the costs of repairing the damage done to the aircraft by the vandalism, if it were proved that Saxton or an agent of his committed the acts. AS 45.50.-501(b) states: "The court make make additional orders or judgments that are necessary to restore to any person in interest any money . . . which may have been acquired by means of an act or practice declared to be unlawful by AS 45.50.471." Since we have concluded that the case must be remanded for a new trial, we think it inappropriate to address the question of whether the superior court could order restitution under AS 45.50.501(b) for the costs of repairing the damage done to the aircraft by the vandalism. Our decision in this regard is based, in part, upon the fact that the question has not been briefed in this appeal.

Nevertheless, it is clear that AS 45.50.501(a) authorizes the state to maintain a claim for injunctive relief against acts declared unlawful under AS 45.50.471 (*i. e.*, acts of vandalism).

Further, AS 45.50.531(a) provides authority for Prichard and Landgrebe to maintain civil actions for actual damages resulting from an act or practice declared unlawful by AS 45.50.471.

3. Civil Rule 41(b) provides in relevant part:
   For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

evidence must be viewed in the light most favorable to the plaintiff. *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 534 (Alaska 1980). *See also King v. Alaska State Housing Authority*, 512 P.2d 887, 890 (Alaska 1973); *Rogge v. Weaver*, 368 P.2d 810, 813 (Alaska 1962). "If the plaintiff has put on a prima facie case based upon unimpeached evidence, the motion to dismiss must be denied." *O'Neill Investigations*, 609 P.2d at 534.

■ In a consumer protection action, a prima facie case is presented when the plaintiff establishes that the defendant engaged in trade or commerce and in the course of that business committed an unfair act or practice. *Id.* The parties do not dispute that Grogan's and Saxton's aircraft repair business is a trade for purposes of the Consumer Protection Act. The disputed issue is whether, in the course of that trade, they committed an unfair act toward Prichard.

The state introduced, or attempted to introduce, evidence that Grogan and Saxton committed three separate unfair acts in their business transactions with Prichard. It was alleged, first, that Grogan and Saxton charged Prichard more than twice as much as they stated they would for repairing his aircraft; second, that the repairs made by them were defective or substandard; and third, that Saxton vandalized Prichard's aircraft when Prichard refused to pay the entire sum charged. As we have previously held, the superior court erred in dismissing the state's claim involving the vandalism of Prichard's aircraft. We now deem it appropriate to discuss, without deciding the merits, the other two claims relating to Prichard.

■ At trial, Prichard testified that he contacted appellees to have work done on his P–18 Supercub airplane, which was partially disassembled. Grogan and Saxton were to complete its assembly and make any repairs necessary so that it would pass annual inspection. Saxton initially estimated that it would cost $800 to do this. After Saxton and Grogan began working on the plane, they informed Prichard that the cost would be $1,200.[4] Prichard agreed to this increase. When the work was completed, Grogan presented Prichard with a bill for over $3,000. Prichard paid approximately $1,200 of this and took possession of the plane. Although he told Grogan that he would pay the balance within thirty or sixty

---

4. In its findings of fact and conclusions of law, the superior court stated:

> The State presented testimony of Larry Prichard that he contracted with defendants to have certain work done on his aircraft for a certain price. When the aircraft was delivered it was discovered that additional work had to be done and that the engine had to be replaced. Further, Mr. Prichard subsequently asked that his airplane be 'annualed' which was not contemplated in the original quote. The State failed to establish that the additional work and the annual was included in the original quoted price. Consequently, his claim must fail.

Our review of the record indicates that Prichard testified, without impeachment, that the increase in the estimate was made after Saxton realized that the engine needed to be replaced and other work needed to be done that was not included in the original estimate. We find nothing in the record to support the finding that Prichard did not request that the plane be annualed until after the $1,200 estimate, or that the defendants did not include the cost of replacing the engine in their estimate.

We note, however, that the superior court judge in the case at bar is a pilot, and there is some indication that he may have improperly taken judicial notice of facts within his personal knowledge about aircraft. In ruling upon the motion to dismiss, the superior court judge stated,

> Now it comes the time when you've got to separate the judge from the court—the pilot from the court. And I don't have to completely close my eyes to everything.... I don't know of any mechanic in the world who is going to give you a set bill on an annual.... Mr. Prichard is not the first pilot that's been awfully surprised by the results of an annual inspection.

Evidence Rule 201(b) provides:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within this state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

In accordance with this rule, it would be impermissible for the trial court to take judicial notice of whether or not a mechanic would give a "set bill" on an annual.

days, he never paid more money to Grogan and Saxton.

While there are no statutes regulating aircraft repairs comparable to AS 45.45.-130—.240, which regulate motor vehicle repairs, it can be argued that once an aircraft repair shop provides an estimate of the costs of repairs, it is an unfair or deceptive act within the meaning of AS 45.50.471(a) for the repair shop to charge significantly more than the estimated cost without obtaining authorization from the customer.

AS 45.50.471(b) provides, in part, as follows:

> The terms 'unfair methods of competition' and 'unfair or deceptive acts or practices' include, but are not limited to, the following acts:
>
> . . . .
>
> (11) engaging in any other conduct created a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services . . . .

Charging a customer significantly more than the estimated cost without informing the customer of the increase and obtaining his or her authorization to proceed could possibly be characterized as conduct that creates "a likelihood of confusion or of misunderstanding" and misleads or deceives the customer. *See Hyland v. Zuback*, 146

N.J.Super. 407, 370 A.2d 20 (1976); *Brown v. Lyons*, 43 Ohio Misc. 14, 332 N.E.2d 380 (1974); *Annot.*, 89 A.L.R.3d 449 (1979). On the other hand, some courts have held that this conduct is not a violation of their respective Consumer Protection Acts. *See, e. g., Meyer v. Diesel Equipment Co., Inc.*, 1 Kan.App.2d 574, 570 P.2d 1374 (1977); *Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 566 P.2d 1177 (1977). Since this question has not been adequately briefed in this appeal we leave it to the parties to brief the matter upon retrial in the superior court.[5]

Testimony was also presented at trial that the work by Grogan and Saxton on Prichard's aircraft was defective and substandard. Prichard testified that he spent $577.23 at another aircraft repair shop to have the work corrected. This testimony was not impeached, nor was evidence to the contrary introduced.[6] AS 45.50.471(b)(6) provides that "representing that . . . services are of a particular . . . quality . . . if they are of another" is an unfair or deceptive act or practice. Whether an act or practice that results in a gross disparity between the value received and the consideration paid is unfair within the meaning of the Consumer Protection Act is yet another issue in this case which has not been adequately briefed on appeal and thus awaits resolution at the retrial of this matter.[7]

**5.** Assuming the rule is adopted that once an aircraft repair shop provides an estimate of the costs of repairs, it is an unfair or deceptive act under AS 45.50.471(a) to charge significantly more than the estimated cost without obtaining authorization from the customer, Prichard's unimpeached testimony established a prima facie case that Grogan and Saxton violated the Consumer Protection Act by failing to obtain Prichard's authorization to perform the requested repairs for more than the estimated cost of $1,200 and thus dismissal was not indicated.

**6.** In granting the motion to dismiss this claim, the superior court stated:

> As far as improper workmanship, . . . the plane flew out of rig. And I think the only way you can make sure a plane is in rig is to fly it, and you have to bring it back to the mechanic and tell him it takes a dive to the right or a dive to the left or it climbs or descends and will not fly . . . hands off.

> Now, you asked me to separate the pilot from some guy sitting up here like a block of concrete. An annual is a relicensing of the aircraft. There's no showing that there was anything wrong with the workmanship. There is a showing—and I accept Mr. Prichard's testimony—that it's out of rig. And I—you have to take it back and let them rig it. That's nothing wrong with the installation.

As we indicated in note 4, *supra*, it would be improper for the trial court to have taken judicial notice that an aircraft could be repaired properly and yet be out of rig. No evidence was offered by appellees on this point, and we therefore find that there was no evidence supporting this finding by the superior court.

**7.** If charging standard rates for services that are substandard or defective is an unfair trade act within AS 45.50.471(b)(6), then Prichard's testimony established a prima facie violation.

### III.

The final issue we consider is whether the superior court erred in excluding evidence of some of Landgrebe's costs in having Grogan's and Saxton's defective or substandard work corrected. The superior court found that appellees agreed to rebuild Landgrebe's aircraft for $5,500 "plus parts," less a $700 credit for traded-in parts. The bill Grogan and Saxton presented to Landgrebe was for $8,655.50. Landgrebe paid, or was credited for, all but $1,255.50. The superior court ordered restitution for Landgrebe in this amount, thus offsetting the outstanding balance of the bill. The state contends that, if the court had permitted its evidence of Landgrebe's costs to be introduced, a higher award for restitution would have been justified. The superior court excluded this evidence because the repairs were made approximately a year and a half after Saxton and Grogan had completed their work on Landgrebe's aircraft. The superior court reasoned that waiting more than a year to correct the work was unreasonable.

■ Assuming that the state has standing to assert this restitutional claim on behalf of Landgrebe under AS 45.50.501(b),[8] we disagree with the superior court's analysis. The significance of the length of time between the Grogan and Saxton work and the corrections Landgrebe had made is that intervening causes may have brought about the conditions that required the subsequent repairs. Appellees would not be responsible for unrelated problems that developed after they completed their work. However, the mere fact that approximately a year and a half went by before Landgrebe had these repairs made does not, in itself, indicate that these repairs were necessary only to correct new problems. We hold that the superior court erred in not admitting evidence of these costs, as well as evidence of

the amount of use the aircraft received and any change in its condition that occurred during that year and a half.

REVERSED and REMANDED for further proceedings consistent with this opinion.[9]

---

*See Woods v. Littleton,* 554 S.W.2d 662 (Tex. 1977); *Town & Country Mobile Homes, Inc. v. Stiles,* 543 S.W.2d 664 (Tex.Civ.App.1976).

**8.** *See* note 2 *supra.*

**9.** The state also argued on appeal that the superior court erred in denying the state's request

to amend its witness list before trial. The reason for the denial was that the request was made so close to the date of trial that it would have prejudiced appellees to have granted it. Since upon remand this problem will not exist, the state's request should be granted.