(774 P.2d 355)

No. 62,943

DAN ADAMS, *Appellant*, v. JOHN DEERE COMPANY, *Appellee*.

—

Opinion filed
May 12, 1989.

*John D. Tongier*, of Holbrook, Ellis & Heaven, P.A., of Kansas City, for the appellant.

*Kathryn H. Vratil* and *Daniel M. Dibble*, of Lathrop, Koontz & Norquist, of Kansas City, Missouri, for the appellee.

Before DAVIS, P.J., LEWIS, J., and TERRY L. BULLOCK, District Judge, assigned.

LEWIS, J.: The appellant, Dan Adams, appeals the decision of the district court granting summary judgment in favor of the defendant, John Deere Company, from the order of the court dismissing his lawsuit with prejudice for failure to prosecute, and from the order denying his motion to file a second amended petition.

The key issue on this appeal is whether a "no-lost-profits" clause in the agreement between the parties is unconscionable and, therefore, unenforceable. Since this issue is virtually dispositive of the appeal, we turn to it first.

The record shows that appellant had been an authorized John Deere dealer in Johnson County since approximately 1975. He was, in fact, at the time of his termination, the senior John Deere dealer in the area based on the number of years he had held the dealership. The appellant is a high school graduate and had attended Emporia State University for two and a half years, completing a number of business, sales, and marketing classes. The trial court found that the appellant had a substantial business enterprise during 1985-86, maintaining a 4,000 square foot retail facility and employing four persons in addition to his wife and himself.

On an annual basis, since 1976, the appellant and John Deere had entered into a written dealer agreement which was prepared by John Deere in a bound, preprinted booklet form. These agreements were presented by John Deere to appellant on a "take-it-or-leave-it" basis, and the terms of the agreement were not generally subject to negotiation or modification in favor of individual dealers. At no time during their business relationship did the appellant ever complain to John Deere or express any concern or dissatisfaction with his John Deere agreement. The no-lost-profits clause in the agreement, which will be set out in detail later, had been in the agreement in substantially the same form since appellant had signed his first agreement in 1976.

Despite that fact, it is conceded by the parties that appellant was unaware of the existence of this particular clause prior to the filing of the present lawsuit. One of the key provisions in the agreement was that it could be terminated by either party by giving 180 days' notice, and could be terminated unilaterally by John Deere in the manner set forth in the agreement.

In addition to carrying John Deere products, appellant carried equipment manufactured by Stihl, Honda, Snapper, and others. By August 1986, John Deere products represented only 34% of the sales of the business owned and operated by the appellant. On August 8, 1986, John Deere notified appellant in writing that his dealership agreement would be summarily terminated effective March 1, 1987. On May 5, 1987, appellant sued John Deere, claiming it wrongfully terminated his dealership for a variety of reasons and seeking to recover damages.

The provision in the agreement which is the key to the resolution of this appeal reads as follows:

"Except as provided herein, neither party is entitled to any compensation or reimbursement for loss of prospective profits, anticipated sales or other losses occasioned by cancellation or termination."

During discovery, it was revealed that appellant sought to recover damages for future loss of profits, and appellee, citing the provision of the agreement quoted above, filed a motion for partial summary judgment, arguing that appellant would not be entitled to recover damages for loss of future profits. The trial court considered the issue and wrote a thoughtful and well reasoned opinion on the matter, holding that the appellant was barred from recovering the damages for lost future profits by reason of his agreement with John Deere, and specifically the no-lost-profits clause in that agreement.

The appellant argues that the no-lost-profits clause of his contract with John Deere is unconscionable and should not be enforced. Appellant candidly admits that, if the clause is enforceable, his lawsuit is a lost cause since the damages he seeks to recover are barred by that clause.

After searching the record in this case and carefully considering the trial court's opinion, we conclude that the trial court was correct; the no-lost-profits clause is not unconscionable as a matter of law and it bars the recovery of the type and nature of damages sought by appellant in this matter.

We are aware that the issues before this court are primarily issues of law having to do with the proper construction and application of the terms of a written agreement. *Pan American Petroleum Corporation v. Cities Service Gas Co.*, 191 Kan. 511, 519, 382 P.2d 645 (1963). Our scope of review, therefore, is essentially de novo and we are not bound in any significant manner by the rulings of the trial court. *Swager v. Board of Education, U.S.D. No. 412*, 9 Kan. App. 2d 648, 655, 688 P.2d 270, *rev. denied* 236 Kan. 877 (1984).

There are a number of Kansas cases, as well as cases from other jurisdictions, dealing with the question of unconscionability of contractual provisions. We conclude that a careful review of those decisions indicates that, unless the provision in question is, under the circumstances, so outrageous and unfair in its wording or its application that it shocks the conscience or offends the sensibilities of the court, or is against public policy, it must be enforced. Further, the burden of establishing that a contract is unconscionable is upon the party attacking it. *Schroeder v. Fageol Motors, Inc.*, 86 Wash. 2d 256, 544 P.2d 20 (1975); *Phillips Machinery Co. v. LeBlond, Inc.*, 494 F. Supp. 318 (N.D. Okla. 1980).

In Kansas, we adhere to the general principle that competent parties may make contracts on their own terms, provided they are neither illegal nor contrary to public policy, and that in the absence of fraud, mistake, or duress a party who has fairly and voluntarily entered into such a contract is bound. This rule applies regardless of a failure to read the contract or inclusion of terms disadvantageous to one party. *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 757, 549 P.2d 903 (1976); *Washington v. Claassen*, 218 Kan. 577, 580, 545 P.2d 387 (1976). A doctrine of unconscionability is used to deny enforcement of unfair or op-pressive contracts because of procedural abuses arising out of the contract formation or because of substantive abuses relating to terms of the contract. *Remco Enterprises, Inc. v. Houston*, 9 Kan. App. 2d 296, 301, 677 P.2d 567, *rev. denied* 235 Kan. 1042 (1984).

The leading case in Kansas on the subject of unconscionability is *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 757. That case involved a factual situation in which the plaintiff's telephone number was listed incorrectly in the yellow pages. Suit followed, with plaintiff seeking to recover damages for loss of future profits

and for his cost of having to seek alternative forms of advertising. The contract between the parties, however, restricted the phone company's liability to a refund of the amount paid by the plaintiff for the directory advertising omitted. The plaintiff sought to avoid the restrictions of the contractual clause in question by claiming it was unconscionable and should not be enforced. The trial court granted summary judgment in favor of the phone company and the Kansas Supreme Court affirmed. The Supreme Court ruled that unconscionability was an issue to be decided on a case-by-case basis under the particular circumstances involved. The facts in *Wille* are similar to the instant case and thus it has direct application. The court in *Wille* laid down some guidance to be followed in resolving the issue of unconscionability, beginning on page 757 as follows:

"Appellant contends the exculpatory clause upon which appellee relies is contrary to public policy and should not be enforced. He asserts unconscionability of contract in two respects: The parties' unequal bargaining position and the form of the contract and the circumstances of its execution.

"American courts have traditionally taken the view that competent adults may make contracts on their own terms, provided they are neither illegal nor contrary to public policy, and that in the absence of fraud, mistake or duress a party who has fairly and voluntarily entered into such a contract is bound thereby, notwithstanding it was unwise or disadvantageous to him (Anno.: Sales—'Unconscionability', 18 ALR 3d 1305, § 2, p. 1307). Gradually, however, this principle of freedom of contract has been qualified by the courts as they were confronted by contracts so one-sided that no fair minded person would view them as just or tolerable."

The court went on to discuss the definitions of unconscionability in the Kansas Uniform Commercial Code, the Uniform Consumer Credit Code, the Consumer Protection Act, and the Residential Landlord and Tenant Act. The court then, on page 758, attempted to define "unconscionability" as follows:

"Although the doctrine of unconscionability is difficult to define precisely courts have identified a number of factors or elements as aids for determining its applicability to a given set of facts. These factors include: (1) The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position [citations omitted]; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods [citation omitted]; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect [citation omitted]; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine

print trivia or in places which are inconspicuous to the party signing the contract [citation omitted.]; (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate [citation omitted]; and (10) inequality of bargaining or economic power. [Citation omitted.]

"Important to this case is the concept of inequality of bargaining power. The UCC does not require that there be complete equality of bargaining power or that the agreement be equally beneficial to both parties (1 Anderson [on the UCC], § 2-302:11, p. 401). As has been pointed out:

" '[The language of the comment to § 2-302 means] . . . that *mere* disparity of bargaining strength, *without more*, is not enough to make out a case of unconscionability. Just because the contract I signed was proffered to me by Almighty Monopoly Incorporated does not mean that I may subsequently argue exemption from any or all obligation: at the very least, some element of deception or substantive unfairness must presumably be shown.' (78 Yale L.J., *supra*, pp. 766-767.)

"The cases seem to support the view that there must be additional factors such as deceptive bargaining conduct as well as unequal bargaining power to render the contract between the parties unconscionable. In summary, the doctrine of unconscionability is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain (1 Anderson, *supra*, § 2-302.11, p. 401)."

On page 764 of the opinion, the court in *Wille* ruled in favor of the phone company as follows:

"Appellant did testify he had not attempted to read the various terms and conditions listed on the reverse side of the contract. He was an experienced businessman and for at least thirteen years had used the yellow pages. In his business it is reasonable to assume he as seller and serviceman had become familiar with printed form contracts that are frequently used in connection with the sale and servicing of heating and air conditioning equipment and their attendant warranties and limitations of liability. And, as pointed out in *Gas House, Inc. v. Southern Bell Tel. & Tel. Co.*, supra, and in several other cases cited therein, yellow pages are not a unique or monopolistic form of advertising. Numerous alternative forms exist.

"There is no indication here either of gross negligence or wilful or wanton conduct in the omission of appellant's listing and he asserts nothing beyond simple neglect. It appears the omissions arose from clerical error in the handling of appellant's request for changes after the original contract.

"In *Steele v. J.I. Case Co.*, supra, we recognized that liability for consequential damages may be limited or excluded contractually unless under all the surrounding facts and circumstances, the limitation or exclusion would be inequitable (Syl. para. 4). Each case of this type must necessarily rest upon its own facts but after examining the terms of the contract, the manner of its execution and the

knowledge and experience of appellant we think the contract was neither inequitable nor unconscionable so as to deny its enforcement."

It is important to note that here, as in *Wille*, the appellant is an experienced businessman who had entered into contracts containing the same no-lost-profits clause since 1976, but had failed to read the contract carefully enough to be aware of the clause.

In post-*Wille* decisions, this court has indicated that the question of unconscionability is one left principally to the sound discretion of the trial court. In *Remco Enterprises v. Houston*, 9 Kan. App. 2d at 296, this court held that the terms of a rental contract, which charged some three and one-half times more in rent to the consumer than the item itself would cost new, were not unconscionable. The court stated in Syl. ¶ 3:

"Generally speaking, the unconscionability of acts under the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.*, and amendments thereto, is left to the sound discretion of the trial court to be determined under the peculiar circumstances of each case."

In *Meyer v. Diesel Equipment Co.*, 1 Kan. App. 2d 574, 579, 570 P.2d 1374 (1977), this court dealt with the issue of unconscionability of certain conduct of one of the parties to the agreement. In deciding the case, we indicated that the trial court's conclusions of unconscionability must be given a certain amount of leeway and said:

"The trial court concluded that defendant's conduct was not unconscionable. We are not of a mind to now hold that defendant's complained-of conduct was unconscionable as a matter of law. With a concept so nebulous as 'unconscionability' involved, it is necessary that a certain amount of leeway be granted trial courts when deciding the unconscionability of acts. Our legislature recognized this and, accordingly, left the unconscionability question to be decided by the court under the peculiar circumstances of each case."

We believe this rationale is applicable here even though *Meyer* dealt with conduct rather than a contractual provision.

The Kansas Supreme Court in *Wille* relied heavily in reaching its decisions on cases from other jurisdictions in which similar clauses of the telephone company's agreements for yellow page advertising had been tested on the issue of unconscionability. This case involves the unconscionability of a no-lost-profits clause inserted into a John Deere agency contract and there are decisions from other jurisdictions dealing with those same contractual clauses. One of those decisions is *Stanley A. Klopp, Inc. v. John Deere Co.*, 510 F. Supp. 807 (E.D. Pa. 1981). That case

involved an individual who had been a John Deere dealer since 1936 whose dealership had been terminated and who sought to recover damages for lost future profits. In that case, John Deere asked for summary judgment based on the no-lost-profits clause. The district judge held the clause was fully enforceable and sustained a motion for summary judgment filed by John Deere. The *Klopp* case is almost identical to the case now before this court.

One of the arguments set forth by appellant is that the agreement in question is an "adhesion contract" submitted to him by John Deere on a take-it-or-leave-it basis containing "one-sided" clauses and, considering the inequality of bargaining power between John Deere and the plaintiff, this court should determine that the no-lost-profits clause is unconscionable.

The Federal District Court in *Klopp*, on page 810, dealt with these issues as follows:

"The avoidance of unfair surprise requires that the language of the clause be clear and precise. [Citation omitted.] The clause involved in this case, quoted at the outset, meets the clarity requirement. It would be difficult to imagine a more precise manner of stating the proposition. [Citation omitted.] Furthermore, the language of the clause is not 'one-sided.' The limitation of liability could have been invoked by either party. As the *Phillips Machinery* court observed:

" '[W]hile limitations of damages clauses such as this one do not appear in all distributorship agreements, they are not uncommon. The purpose of such clauses is to protect both parties from having to pay lost profits in the event of termination, since either the manufacturer or distributor may decide to terminate and give their business to a competitor.' "

On page 811 of the opinion, the court stated:

"Plaintiff has contended that there was inequality of bargaining power between these parties, although it offers no affidavit or discovery evidence to put this in issue. Bargaining power is as much a function of market forces as it is of size. Therefore, a bare allegation of disparate size does not necessarily warrant an inference of disparate bargaining power. Nonetheless, accepting plaintiff's contention would not alter the outcome. Mere unequal bargaining power between contracting parties does not render their contracts unconscionable. *Phillips Machinery Co. v. LeBlond, Inc.*, 494 F.Supp. 318, 322 (N.D.Okla 1980). Nor is negotiation necessary between experienced parties. *Id.* at 324. [Citations omitted.]"

Here, as in *Klopp*, the plaintiff indicates that he was unaware that the no-lost-profits clause was in his contract, although he had signed a similar contract annually since 1976. The court in *Klopp* disposed of this contention as follows:

"Plaintiff has not alleged fraud or incompetence. It has alleged that the contract

was signed in haste but this is not a justification for ignorance of the contents. *See Thrasher v. Rothrock*, 105 A.2d 600, 604 (1954). Plaintiff's position is even more untenable *when it is recognized that since a no-lost-profits clause has been in the contract for thirteen years, by alleging ignorance of this term plaintiff is in fact alleging that it signed 13 contracts without reading them.* The general rule which imposes a duty to read, the clear language used in the clause, and the plaintiffs' own neglect for thirteen years to inform itself lead me to conclude that as a matter of law the plaintiffs' lack of knowledge cannot be said to be an unfair surprise worked by the defendant.

"The undisputed facts show that the contract was signed on behalf of the plaintiff by a businessman with over forty years' experience. The business relationship between the plaintiff and the defendant was of equal duration. There are no genuine issues of material facts relating to the commercial setting. As a matter of law, I conclude that there was no procedural unfairness in the execution of the contract containing the clause. [Citation omitted.] The language of the clause is not one-sided and is clear and precise. It does not exculpate but rather limits the liability of both parties to the measures provided in the contract. It has appeared in substance in every annual contract since 1965. As a matter of law, based on the undisputed facts, I conclude that the clause is not substantively unconscionable." (Emphasis added.) 510 F. Supp. at 811.

It is to be noted that in *Klopp*, as well as in *Wille*, the court laid great importance on the fact that a similar clause had been in the agreement between the parties for a number of years. This appears to be a common theme that runs through the cases which hold such clauses not to be unconscionable. See Annot., 38 A.L.R.4th, 96. In *J. D. Pavlak, Ltd. v. William Davies Co., Inc.*, 40 Ill. App. 3d 1, 351 N.E.2d 243 (1976), one of the factors cited by the court in reaching the conclusion that the clause was not unconscionable was the fact that the parties had dealt with each other at least 50 times before entering into the contracts in question and that the same complained-of formula had been used in their prior dealings. In *Boone Val. Coop. Proc. Ass'n v. French Oil Mill Mach. Co.*, 383 F. Supp. 606 (N.D. Iowa 1974), one of the factors cited by the court was the fact that the parties had been engaged in business endeavors for over 20 years and that the clause limiting damages had often been a part of their prior arrangements. In *Cayuga v. Allis-Chalmers*, 95 App. Div. 2d 5, 465 N.Y.S.2d 606 (1983), the court held that a clause limiting liability for breach of warranty to repairing or replacing defective parts was not unconscionable because, among other things, the parties had been doing business together for a number of years and the plaintiff had signed contracts containing terms similar to the one involved in that case.

In *Kansas City Structural Steel Co. v. L. G. Barcus & Sons, Inc.*, 217 Kan. 88, 95, 535 P.2d 419 (1975), the Kansas Supreme Court, in holding that an exculpatory clause limiting liability was not unconscionable, stated:

"In the instant case, it is true, K. C. Steel's liability for damages was severely limited by the exculpatory clause, but the same limitation was included in a prior contractual arrangement between the same parties and was inserted by Barcus itself in the present purchase order. Accordingly, both parties were familiar with the contents of the clause—it was, in fact, no stranger to either one."

We conclude that the decision of the Kansas Supreme Court in *Wille v. Bell Telephone Co.*, and other decisions cited in this opinion, are authority for the fact that the no-lost-profits clause in the agreement presently before this court is not unconscionable as a matter of law. The trial court's granting of partial summary judgment in favor of the appellee is affirmed.

The appellant next argues that John Deere acted wrongfully in terminating his agency agreement. He argues that, even though the no-lost-profits clause may not be unconscionable on its face, it should not be enforced where the dealer has wrongfully terminated his agreement. This particular argument has been considered before by the Kansas courts, and has been rejected. The gist of appellant's argument is that, even though the clause in question may not be unconscionable on its face, it may become unconscionable because of the facts under which the agreement was terminated.

In *Estate of Link v. Wirtz*, 7 Kan. App. 2d 186, 638 P.2d 985, *rev. denied* 231 Kan. 800 (1982), there was a similar argument involving a lease provision. In that case, the court dealt with a lease which originally leased property to the defendant for a period of 20 years at an annual rate of $200 per year and which contained an option to renew for another 20 years at $200 per year. The holder of the lease exercised its option, renewed the lease for another 20 years, and the argument was made that the rental provision became unconscionable by the passage of time. This court reversed the trial court's decision that the clause was unconscionable, and on page 189 stated as follows:

"As was noted above, the trial court in this case found, as was stipulated, that the rental provision was conscionable when made. The mere passage of time made the rental term appear to be unfair. Apparently time had turned this lease into a bad bargain. Despite the general rule that the trial court will look to the circumstances as they existed at the inception of the contract rather than in the

light of subsequent events to determine whether the agreement is conscionable, a court is not powerless in equity to remedy that which it perceives as present unconscionability."

We concluded in *Link* that if an agreement was conscionable when entered into, it could not be rendered unconscionable by the light of subsequent events. In *Klopp v. John Deere*, 510 F. Supp. 807, the plaintiff argued, as he does here, that the termination of his dealership was wrongful and that it was a breach of contract in and of itself. He further argued that, under those circumstances, the no-lost-profits clause could not apply. The court, in ruling against the plaintiff, stated on page 812:

"Plaintiff's second argument, that the termination was wrongful and this renders the limitation clause unenforceable, is similarly flawed. The question of whether the termination was wrongful depends upon events surrounding the notice of termination and the events which the parties contend precipitated the notice. Those facts are irrelevant to a determination of whether the limitations clause is unenforceable because it is unconscionable. The issue of unconscionability is to be determined as of the date the contract was made. [Citations omitted.] The test is applied as of the time of contract formation. If the clause is not unconscionable at that time, a subsequent breach cannot effect it. Because I have concluded that the clause was not unconscionable at the time it was made, I reject as irrelevant *on the issue of the enforceability of this clause* the plaintiff's allegations and arguments relating to the propriety or impropriety of the termination."

We rely on the reasons in *Klopp*, and the rule of law handed down by this court in *Estate of Link v. Wirtz*, 7 Kan. App. 2d 186, in concluding that the appellant's arguments as to the impropriety of the termination of his agency agreement are immaterial and irrelevant to the question of whether the "no-lost-profits" clause is unconscionable.

The appellant raises other issues on appeal concerning the propriety of the trial court's action in dismissing his lawsuit with prejudice for lack of prosecution and its refusal to allow him to file an amended petition. However, on oral argument, the attorney for appellant conceded that if the trial court's granting of summary judgment on the issue of the unconscionability of the contract was affirmed, he would be unable to prove damages either under the present lawsuit on file or under the theories advanced on his amended petition. Our decision to affirm the granting of summary judgment by the trial court on the question of the no-lost-profits clause is determinative of this appeal.

Affirmed.