911 So.2d 176 (2005)
Paola BRICEÑO, Appellant,
v.
SPRINT SPECTRUM, L.P., d/b/a Sprint PCS, Appellee.
No. 3D05-144.
District Court of Appeal of Florida, Third District.
August 31, 2005.
*177 Kurzban, Kurzban, Weinger & Tetzeli, P.A., and Jed Louis Kurzban, and N. Alejandra Arroyave, Miami, for appellant.
Reimer & Rosenthal LLP, and Alex P. Rosenthal, Weston, and Jennifer S. Rao, for appellee.
Before WELLS and CORTIÑAS, JJ., and SCHWARTZ, Senior Judge.
CORTIÑAS, Judge.
The plaintiff, Paola Briceño ("Briceño"), appeals from a non-final order granting a Motion to Compel Arbitration made by the defendant, Sprint Spectrum, L.P. d/b/a Sprint PCS ("Sprint"). We affirm.
Briceño, a college-educated woman, was employed by an invitation-design company and also relied on babysitting jobs for income. In December 2000, she entered into a contract with Sprint for cellular telephone service. In addition to her personal uses, she used the telephone as her published babysitting contact number.
In October 2003, Briceño brought her Sprint camera-telephone to a Sprint store for repair. Briceño had created a website *178 that she could access via her Sprint telephone. She alleged that Sprint employees asked for her password and, upon accessing her e-mail account, obtained and disseminated personal photographs of her body to third persons via the internet. Briceño sued Sprint for common law invasion of privacy by public disclosure of private facts, for common law invasion of privacy upon the plaintiff's seclusion or solitude, and for interception and disclosure of electronic communications under Chapter 934 of the Florida Statutes. Sprint filed a Motion to Compel Arbitration pursuant to its "Terms and Conditions of Service" ("Terms and Conditions").
Sprint's customary business practice is to include the Terms and Conditions in the packaging of its telephones. Briceño and Sprint dispute whether she was given the Terms and Conditions with her original telephone. However, it is undisputed that Briceño had access to the Terms and Conditions and its subsequent amendments via Sprint's website. Sprint printed a "Notice of Changes" on the front of the June 16, 2003 invoice that it mailed to Briceño. This notice informed her that amendments to the original Terms and Conditions were posted on Sprint's website. Briceño stated that she never read any of the original or amended Terms and Conditions, either on the internet or in hard-copy, because it was "not important" to her. She also stated that she saw the "Terms and Conditions of Service" internet link, but did not care to click it.
Relevant to this appeal is the 2003 amendment to the Terms and Conditions concerning Sprint's mandatory arbitration clause. The record on appeal shows that this clause had been included in the Terms and Conditions since 2001, and was completely capitalized in the June 1, 2003 version. The 2003 amendment provided, in pertinent part:
MANDATORY ARBITRATION OF DISPUTES. ANY CLAIM, CONTROVERSY OR DISPUTE OF ANY KIND BETWEEN THE CUSTOMER AND THE COMPANY AND/OR ANY OF ITS EMPLOYEES, AGENTS, AFFILIATES OR OTHER REPRESENTATIVES, WHETHER SOUNDING IN CONTRACT, STATUTE, OR TORT, INCLUDING FRAUD, MISREPRESENTATION, FRAUDULENT INDUCEMENT, OR ANY OTHER LEGAL OR EQUITABLE THEORY AND REGARDLESS OF THE DATE OF ACCRUAL OF SUCH CLAIM, CONTROVERSY OR DISPUTE SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION AS PRESCRIBED IN THIS SECTION. THE FEDERAL ARBITRATION ACT, NOT STATE LAW, GOVERNS THE QUESTION OF WHETHER A CLAIM IS SUBJECT TO ARBITRATION....
Both the original and subsequent amendments to the Terms and Conditions stated that customers have a right to reject changes and terminate service if they disagreed with any proposed amendments. However, the Terms and Conditions were silent as to whether customers would have to pay an early termination penalty of $200 if they decided to reject the changes.
Briceño claimed that she would not have terminated her Sprint subscription because she published her Sprint telephone number in a book of babysitters given to area concierges, and that she derived much of her business from calls received through that service. She also claimed that she could not change the telephone number in the book.
From 2000 to 2003, Briceño changed her Sprint telephone equipment four times. On each occasion, it was customary for *179 Sprint to include the applicable Terms and Conditions in each telephone box. Beginning in 2001, the Terms and Conditions also included a choice-of-law provision requiring that any suit would be subject to Kansas state law.
It is well established that applicable state law governs the question of whether a general contract clause, such as the arbitration clause in this case, is invalid on such grounds as fraud, duress, or unconscionability. See Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). Florida courts "will generally enforce choice-of-law provisions `unless the law of the chosen forum contravenes strong public policy.'" Walls v. Quick & Reilly, Inc., 824 So.2d 1016, 1018 (Fla. 5th DCA 2002) (quoting Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So.2d 306, 311 (Fla.2000)).
The trial court analyzed the arbitration clause under federal and Florida law and ruled that, although the amended arbitration clause may have been procedurally unconscionable, the clause was not substantively unconscionable and should be enforced.[1] We review de novo the trial court's granting of Sprint's Motion to Compel Arbitration. See Tropical Ford, Inc. v. Major, 882 So.2d 476, 478 (Fla. 5th DCA 2004)(affirming that "the appellate court reviews de novo a trial court's ruling on a motion to compel arbitration").
In this case, the "Terms and Conditions of Service" expressly provide that federal and Kansas state law govern the Sprint agreement. Based on the choice-of-law provision in Sprint's 2001 Terms and Conditions, the trial court should have applied the Kansas unconscionability standard. See, e.g., Baron v. Best Buy Co., 79 F.Supp.2d 1350 (S.D.Fla.1999) (disapproving district court's application of Florida law regarding unconscionability when choice-of-law provision called for federal and Delaware state law in similar Motion to Compel Arbitration case). As there is no evidence given that a Florida public policy would be contravened by applying Kansas' similar unconscionability standard, the arbitration clause should be interpreted under Kansas law. Compare Adams v. John Deere Co., 13 Kan.App.2d 489, 774 P.2d 355, 357 (1989)(holding that the Kansas unconscionability standard invalidates clauses that shock the judicial conscience because of their inherent unfairness based on a balancing test) with Steinhardt v. Rudolph, 422 So.2d 884, 889 (Fla. 3d DCA 1982)(defining contractual unconscionability as a contract or clause that no sensible person would make and no fair person would accept; also restating that the courts should consider unconscionability based on a balancing test).
Under Kansas law, "[u]nless the provision in question is, under the circumstances, so outrageous and unfair in its wording or its application that it shocks the conscience or offends the sensibilities of the court, or is against public policy, it must be enforced." Adams, 774 P.2d at 357. In Adams, the court noted that unconscionability denies "enforcement of unfair or oppressive contracts because of procedural abuses arising out of the contract formation or because of substantive abuses relating to terms of the contract." Id. Although it is more of a balancing test, the *180 Kansas standard, like the Florida standard, examines both procedural and substantive unfairness in order to find a contractual provision unconscionable. Id. at 359 (concluding that, in addition to procedural unfairness, some element of substantive unfairness should be shown in order to find a contractual provision unconscionable).
Defining unconscionability under Kansas law requires a case-by-case analysis, for which the Kansas Supreme Court has set out several factors which should be considered. Among the relevant factors are the circumstances surrounding the execution of the contract, the concealing of clauses which are disadvantageous to one party in a mass of fine print or in places which are inconspicuous to the party signing the contract, the inclusion of penalty clauses, exploitation of the underprivileged, unsophisticated, uneducated and illiterate, and inequality of bargaining or economic power. See Wille v. Southwestern Bell Tel. Co., 219 Kan. 755, 758-59, 549 P.2d 903 (Kan.1976). Although factors such as these should be considered, they need not all exist in order for a clause to be found unconscionable. Id. These factors should be considered together, as a balancing test. Id. at 759, 549 P.2d 903.
Briceño, a college-educated woman, is certainly not illiterate, uneducated, or unsophisticated. Kansas law points out that there is a duty to read, especially when the clause language is clear. See Adams, 774 P.2d at 361 (citing Stanley A. Klopp, Inc. v. John Deere Co., 510 F.Supp. 807, 811 (E.D.Pa.1981)). Briceño stated that she did not read the Terms and Conditions because she did not care about reading them and also stated that she did not like to read. Thus, Briceño failed to avail herself of the information presented to her.
Also, there is no evidence that Sprint concealed or attempted to conceal the aforementioned original or amended Terms and Conditions. When an amendment was made, the first page of each invoice stated that the Terms and Conditions were periodically amended and listed two ways in which customers could access information about any changes. Each month, an invoice was mailed to Briceño. As Sprint periodically amended its Terms and Conditions and printed them immediately below the amount due, several of Briceño's invoices warned her to check for recent changes. Specifically, her June 16, 2003 invoice stated:
Important Notice Regarding Your PCS Service from Sprint
The Terms and Conditions of PCS Service from Sprint have changed. To view the current version, please visit www.sprintpcs.com or press *2 on your PCS Phone and request a copy from a PCS Customer Solutions Specialist.
As Briceño had a fair and clear warning of changes, conspicuously given on the first page of her invoice, there was no unfair surprise in this case which would reach the level of unconscionability. Further, Sprint gave Briceño the opportunity to opt out of her contract if she so decided. Balancing these factors, we find nothing inherently unfair which would lead to a finding of unconscionability.
The only troubling fact is the uncertainty regarding whether or not Sprint would have enforced its early termination penalty clause in the event that Briceño had sought termination upon disagreeing with a proposed amendment to the Terms and Conditions. However, there is no evidence that Sprint charged any other customers a termination penalty for cancellation of a contract due to their refusal to accept amendments to its Terms and Conditions. *181 We note that enforcement of an early termination fee, coupled with more onerous terms or amendments, could render an amendment unconscionable and, thus, unenforceable. See Meyer v. Diesel Equip. Co., Inc., 570 P.2d 1374, 1379 (Kan.Ct.App.1977)(holding that, although the circumstances did not lead to a finding of unconscionability, "[i]nstances conceivably may arise where a defendant's conduct is so outrageous and shocking to the conscience as to dictate a finding of unconscionability, regardless of the lower court's finding"). However, this is not the situation here.
In the case at hand, the trial court found that, even if some element of procedural unconscionability existed, there was insufficient evidence of substantive unconscionability. We agree with the trial courts ultimate decision that the arbitration clause was valid and enforceable.
Affirmed.
NOTES
[1] Recently, the Fourth District considered a similar arbitration clause in a contract between another wireless telephone provider and several users and held that, under Florida law, the arbitration clause was neither procedurally nor substantively unconscionable. Voicestream Wireless Corp. v. U.S. Communications, Inc. et al., No. 4D04-4913, 912 So.2d. 34, 2005 WL 2016838 (Fla. 4th DCA Aug.24, 2005).