776 So.2d 940 (2000)
CUNINGHAM HAMILTON QUITER, P.A., Appellant,
v.
B.L. OF MIAMI, INC., Appellee.
No. 3D00-1338.
District Court of Appeal of Florida, Third District.
November 15, 2000.
Rehearing Denied February 21, 2001.
*941 Daniels, Kashtan, Fornaris, Downs & Oramas and Richard G. Daniels, Coral Gables, for appellant.
Hunton & Williams and Vance E. Salter, Miami, for appellee.
Before JORGENSON, COPE, and RAMIREZ, JJ.
PER CURIAM.
Cuningham Group Construction Services, LLC (CGCS) and B.L. of Miami, Inc., (B.L.) the plaintiff below, entered into a signed, written agreement ("Design-Build contract") for the design and construction of B.L.'s entertainment complex. The Design-Build contract provides for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement or its breach." It further provides that "all parties necessary to resolve a claim shall be parties to the same arbitration proceeding. Appropriate provisions shall be included in other contracts relating to the Work to provide for the consolidation of arbitrations."
CGCS entered into a separate contract ("Subcontract") with architectural firm Cuningham, Hamilton, Quiter, P.A. (Cuningham), defendant below, in which Cuningham agreed to provide architectural and engineering services for B.L.'s project. The Subcontract provides for arbitration by incorporation of the AGC, Standard Form of Agreement between Contractor and Architect and the Design-Build Agreement.[1]
*942 After a dispute arose between the parties, B.L. instituted arbitration proceedings against CGCS and filed suit against Cuningham. Cuningham moved to dismiss and compel arbitration pursuant to the arbitration clause in the Design-Build contract. The trial court denied the motion. For the following reasons, we reverse.
"There are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla. 1999). Only the first two prongs are at issue in this case.
B.L. argues that it cannot be forced to arbitrate its claims against Cuningham because there is no signed contract directly between the parties. It is well established that the courts broadly construe arbitration provisions containing the language, "arising out of or relating to," such that in certain instances the clause will include non-signatories. See, e.g., Vic Potamkin Chevrolet, Inc. v. Bloom, 386 So.2d 286 (Fla. 3d DCA 1980); Sas v. Phoenix Graphics, L.C., 700 So.2d 422 (Fla. 3d DCA 1997); Passerrello v. Robert L. Lipton, Inc., 690 So.2d 610 (Fla. 4th DCA 1997); compare Roberts v. Lloyd, 695 So.2d 400 (Fla. 4th DCA 1997).
Such an instance is presented here. The Design-Build arbitration clause, by its own words, provides for inclusion of "necessary parties" in arbitration. Because, as discussed below, B.L.'s claims are intertwined with the Design-Build contract, Cuningham is a necessary party to the arbitration.
Moreover, it is clear that the parties intended to settle disputes by arbitration rather than through the courts. The Design-Build contract specifically names Cuningham as the architect/engineer to be retained by CGCS and provides that subcontracts must contain an arbitration provision similar to that in the Design-Build contract. The Design-Build contract obligated Cuningham to agree to arbitration. The subcontract between Cuningham and CGCS did, in fact, contain the required arbitration clause and incorporated by reference the Design-Build contract. This requirement that subcontracts must contain arbitration clauses, together with the "necessary parties" clause, express B.L.'s intent to arbitrate disputes with subcontractors, specifically Cuningham, pursuant to the Design-Build agreement.[2]See K.P. *943 Meiring Constr., Inc., v. Northbay I & E, Inc., 761 So.2d 1221 (Fla. 2d DCA 2000).
B.L. next argues that its claims do not "arise out of or relate to" the Design-Build contract. We disagree. "[I]n order for the dispute to be characterized as arising out of or related to the subject matter of the contract ... it must, at the very least, raise some issue the resolution of which requires a reference to or construction of some portion of the contract itself." Seifert, 750 So.2d at 639; c.f. Mirson v. The Corradino Group, Inc., 751 So.2d 699, 701 (Fla. 3d DCA 2000).
B.L.'s claims for professional malpractice, negligent misrepresentation, and fraud stem from the same allegations, namely, that Cuningham negligently failed to perform its duties during the pre-design stage and that Cuningham "self-serving[ly]" misadvised B.L. to retain CGCS, Cuningham's affiliate. B.L. argues that its claims arise solely from a prior oral agreement, and are unrelated to the Design-Build Agreement. We therefore examine B.L.'s claims to determine whether each arises out of or relates to the Design-Build agreement.
B.L.'s professional malpractice claim arises out of the Design-Build contract. The Design-Build contract outlines the very duties B.L. alleges Cuningham breached.[3] It also provides a payment schedule allotting more than 10% of the payments to architectural services, which were to be provided by Cuningham. In addition, when a B.L. representative was asked during deposition whether the Design-Build contract provides for "preliminary evaluation of the site, ... preliminary schedule, ... [and] schematic design," services within the ambit of Cuningham's architectural/engineering duties, the representative answered, "the ... agreement calls for everything." Clearly, B.L.'s claim for professional negligence is intimately intertwined with the Design-Build contract, and is, therefore, arbitrable.
B.L.'s claims for negligent misrepresentation and fraud relate to the Design-Build contract. As to both claims, B.L.'s chief allegation is that Cuningham, in advising B.L. to retain CGCS (Cuningham's affiliate), acted in its own interest to the detriment of B.L. In other words, B.L. claims that Cuningham wrongfully induced B.L. to enter into the Design-Build agreement, a claim which clearly relates to the Design-Build agreement. Therefore, this claim is also subject to arbitration. See, e.g., Passerrello v. Robert L. Lipton, Inc., 690 So.2d 610 (Fla. 4th DCA 1997); Post Tensioned Eng'g Corp. v. Fairways Plaza Assoc., 412 So.2d 871, 874 n. 2 (Fla. 3d DCA 1982).
Reversed and remanded with directions to compel Cuningham to arbitration.
NOTES
[1] The CGCS-Cuningham subcontract provides:

The terms and conditions of our services shall be governed by the Master Agreement between [Cuningham] and CGCS once said agreement has been executed by both parties. Until the above agreement is in place, the terms and conditions of our services shall be governed by the standard language of AGC, Standard Form of Agreement Between Architect and Design/Builder.
[2] Other courts have framed this issue in terms of equitable estoppel. In a setting akin to that here, the Seventh Circuit wrote:

Hughes is equitably estopped from asserting [that it cannot be required to arbitrate] in this case, because the very basis of Hughes' claim against J.A. is that J.A. breached the duties and responsibilities assigned and ascribed to J.A. by the agreement between Clark and Hughes. Hughes has characterized its claims against J.A. as sounding in tort, i.e., intentional and negligent interference with contract. In substance, however, Hughes is attempting to hold J.A. to the terms of the Hughes-Clark agreement. Hughes' complaint is thus fundamentally grounded in J.A.'s alleged breach of the obligations assigned to it in the Hughes-Clark agreement. Therefore, we believe it would be manifestly inequitable to permit Hughes to both claim that J.A. is liable to Hughes for its failure to perform the contractual duties described in the Hughes-Clark agreement and at the same time deny that J.A. is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause.
Hughes Masonry Co., v. Greater Clark County Sch. Bldg. Corp., 659 F.2d 836, 838-839 (7th Cir.1981); McBro Planning and Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342 (11th Cir.1984). Although the contract terms are enough to compel arbitration in the case sub judice, we note that we would reach the same result under the doctrine of equitable estoppel.
[3] Although Cuningham is not a signatory to the Design-Build contract, the contract does outline Cuningham's duties, which were to be delegated to it by CGCS.