LAGOA, Judge.
August J. Ceradini (“Ceradini”) appeals from an order denying his motion to compel arbitration. For the following reasons, we reverse.
I. FACTUAL HISTORY
On July 14, 2003, Florida Entertainment, LLC (“Florida Entertainment”) and Appellee IGT Services, Inc. (“IGT”) entered into a Marketing Sales Agreement (the “Agreement”) in which IGT agreed to provide advertising and financial services to Florida Entertainment. For purposes of this appeal, only two provisions of the Agreement are relevant. Section 14 requires that any dispute arising under the Agreement be resolved exclusively by arbitration in the City of Miami:
14. Arbitration. Any dispute or controversy arising out of or relating to this Agreement, any document or instrument delivered pursuant to, in connection with, or simultaneously with this Agreement, or any breach of this Agreement or any such document or instrument shall be settled exclusively by arbitration to be held in the City of Miami, Florida in accordance with the Arbitration Rules and the Supplementary Procedures for Large, Complex Disputes then in effect of the American Arbitration Association or any successor thereto.... Judgment may be entered on the arbitrator’s decision in any court having jurisdiction, and the parties irrevocably consent to the jurisdiction of the courts of the State of Florida and of any federal court located in such State for this purpose....
Section 15 further provides that both parties will consent to jurisdiction in Florida courts:
15. Jurisdiction. Subject to Section 14, each party hereby irrevocably consents to the jurisdiction of the courts of the State of Florida and of any federal court located in such State in connection with any action or proceeding arising out of or relating to this Agreement, any document or instrument delivered pursuant to, in connection with, or simultaneously with this Agreement, or a breach of this Agreement or any such document or instrument....
On August 4, 2003, Florida Entertainment and IGT executed an Amendment reaffirming the Agreement’s provisions:
6. All of the terms, provisions, covenants and conditions of the Agreement shall hereafter continue in full force and effect in accordance with the terms thereof, except to the extent expressly modified, amended or revised herein.
On the same date that the Amendment was executed, Ceradini entered into a Guarantee Agreement with IGT where he personally guaranteed Florida Entertainment’s obligations under the Agreement. A whereas clause indicates that the Guarantee Agreement is tied to the initial Agreement:
WHEREAS, IGT has agreed to provide certain monies to finance certain working capital needs of Florida Entertainment for the operation of the vessel St. *350 Tropez in Ft. Lauderdale, Florida (the “Vessel”) by Florida Entertainment pursuant to the terms and conditions of that certain Marketing Services Agreement dated July 14, 2003 and as amended by the Amendment dated August 4, 2003, between IGT and Florida Entertainment (the “Amendment”)
The Guarantee Agreement does not contain an arbitration provision, but does contain a provision whereby Ceradini consents to jurisdiction and venue in Miami-Dade County and argues that IGT may bring suit there at its option:
i. GUARANTOR HERBY IRREVOCABLY CONSENTS TO THE JURISDICTION AND VENUE OF COURTS HAVING SITUS IN THE COUNTY OF DADE, FLORIDA, AND AGREE THAT ANY LITIGATION INVOLVING THIS GUARANTEE MAY, AT THE SOLE OPTION OF IGT, BE CONDUCTED IN SUCH COURTS. GUARANTOR HEREBY WAIVES ANY RIGHT THEY MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY SUIT, ACTION OR OTHER PROCEEDING BROUGHT AGAINST GUARANTOR BY IGT IN ACCORDANCE WITH THIS SECTION, OR TO CLAIM THAT ANY SUCH PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.
Thereafter, IGT filed a complaint in the circuit court in and for Miami-Dade County against both Ceradini and another guarantor. The complaint alleged that Florida Entertainment failed to sustain its financial obligations under the Agreement, and that Ceradini as a guarantor was personally liable for all amounts owed.[1]
Ceradini moved to dismiss the complaint and compel arbitration based upon the contention that the Guarantee Agreement and the Agreement should be read together and that the Guarantee Agreement’s permissive venue and jurisdiction clause could not trump the Agreement’s mandatory arbitration provision. The trial court denied the motion and this appeal ensued.
II. ANALYSIS
Although the Guarantee Agreement does not contain an arbitration provision, the law is clear that an arbitration *351 provision in the main agreement is to be read into any corresponding guarantee agreement. See Berti v. Cedars Healthcare Group, Ltd., 812 So.2d 580, 581 (Fla. 3d DCA 2002). When the terms of one contract are intertwined with another, the public policy in favor of arbitration compels that the parties abide by an arbitration provision that is only located in one of the contracts. See Cuningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc., 776 So.2d 940, 942 (Fla. 3d DCA 2000).
IGT agreed to exclusively arbitrate “any dispute or controversy arising out of or relating to” the Agreement. It is clear from IGT’s complaint that the cause of action alleged against Ceradini “arises out of or relate[s] to” the Agreement. Vic Potamkin Chevrolet, Inc. v. Bloom, 386 So.2d 286, 288 (Fla. 3d DCA 1980). “Because it affirmatively appears that the appellant was personally liable on a guarantee of the provisions of an agreement, which included an arbitration clause, between the appellee and another [entity], [the parties were] bound as a matter of law to arbitrate the instant dispute.” Berti 812 So.2d at 581 (internal citations omitted).
The fact that the Guarantee Agreement contains a jurisdiction clause requiring the parties to consent to jurisdiction in the courts of Miami-Dade County does not change this result. Indeed, it is a cardinal principal of contract construction that agreements are to be interpreted so as to give meaning to all their provisions. World Vacation Travel, SA de C.V. v. Brooker, 799 So.2d 410, 412 (Fla. 3d DCA 2001). Because the Guarantee Agreement and the Agreement are to be read together, the only question remaining is whether the Guarantee’s jurisdiction provision trumps or waives the Agreement’s arbitration provision. We find that as a matter of law it does not. The jurisdiction and venue provision of the Guarantee Agreement states only that litigation “may, at the sole option of IGT, be conducted” in Miami-Dade County. As such, this provision is not mandatory. See Granados Quinones v. Swiss Bank Corp., S.A., 509 So.2d 273, 274 (Fla.1987)(mandatory clauses in contracts require that a particular forum be the exclusive jurisdiction for litigation concerning the contract). Under the Guarantee, IGT had the option of suing Ceradini in Miami-Dade County, but that does not require an action to be brought there. The Agreement’s arbitration provision, however, is mandatory and requires “any dispute or controversy arising out of or relating to” the Agreement be resolved “exclusively” by arbitration. Indeed, “[ajgreeing to personal jurisdiction and venue is a far cry from waiving a right to arbitrate.” Qadri v. PointDirex, L.L.C., 823 So.2d 861, 864 (Fla. 5th DCA 2002).
Accordingly, we reverse the trial court’s order denying Ceradini’s motion to compel arbitration and remand with directions to compel arbitration.
Reversed and remanded.

. Specifically, the complaint alleged:
8. On or about July 14, 2003, IGT and Florida Entertainment LLC ("Florida Entertainment”) entered into a marketing services agreement (the "Agreement”).
9. The Agreement was modified by an amendment dated August 4, 2003 between IGT and Florida Entertainment (the “Amendment”).
10. On the same date that the Amendment was executed, both Mr. Andren and Mr. Ceradini executed identical personal guarantees (collectively the "Personal Guarantees”), which provided that each of them would act as Guarantors for the performance of all of Florida Entertainment’s financial obligations under the Agreement and Amendment.... The Personal Guarantees provide in pertinent part:
Guarantor hereby absolutely, jointly and severally, irrevocably and unconditionally guarantees to IGT, as primary obligor and not merely as surety, all of the Obligations (as defined below) of Florida Entertainment under the Agreement. "Obligations” shall mean the prompt payment when due of all payments and other financial obligations of any kind or nature, whatsoever of Florida Entertainment under the Agreement, including without limitation any supplements, addenda and riders from time to time executed or- delivered in connection therewith.
[[Image here]]
21. Mr. Ceradini breached his personal guarantee with IGT by failing to pay IGT the Obligation owed by Florida Entertainment and which was personally guaranteed by him.