LAGOA, Judge.
 

 The appellants, five of eight defendants in the suit below, appeal from the trial court’s order denying their motion to compel arbitration and motion to dismiss for improper venue. For the following reasons, we reverse that portion of the order denying the appellants’ motion to compel arbitration. We affirm, however, that portion of the order denying the motion to dismiss for improper venue without further discussion.
 

 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 This case concerns one of what appears to be multiple disputes among parties to a development project in Miami known as
 
 *967
 
 the Wagner Square Project (“Wagner Square”). The developers of the project are Wagner Square, LLC (“Wagner”), Wagner Square I, LLC (“Wagner I”), and KMT Enterprises, LLC (“KMT”). KMT, which was previously known as Seybold Pointe Management, LLC, was formed by the appellant Debra Sinkle Kolsky (“D. Kolsky”) and others in 2003. Since 2005, KMT has been the manager of both Wagner and Wagner I (collectively, the “Wagner companies”).
 

 The members of KMT are the appellee, Jackson Square, LLC (“Jackson Square”), and D. Kolsky. KMT’s managers are D. Kolsky and Joey Edelsberg (“Edelsberg”), a member of Jackson Square. The members of Wagner are Jackson Square and appellant Redevco Civic Center, LLC (“Redevco”), of which D. Kolsky is an officer and the manager. Additionally, Jackson Square is a member of Wagner I along with appellant the Debra Sinkle Kolsky Trust, Dated January 4, 2000 (the “DSK Trust”). In 2007, Jackson Square purchased its interests in KMT and the Wagner companies.
 

 In 2003, Wagner and Wagner I entered into a contract with appellant Platinum Property Management, Inc. (“Platinum”), giving Platinum the authority to act as leasing broker and property manager for the commercial use project phases of Wagner Square. The owners and officers of Platinum are D. Kolsky and appellant Allan Kolsky (“A. Kolsky”).
 

 KMT operates pursuant to the Amended and Restated Operating Agreement of KMT Enterprises, LLC (the “KMT agreement”), which states that disputes between the members are subject to arbitration:
 

 In the event any disputes arise between the Members or in the event that the Members cannot unanimously agree on any decisions for which unanimity is required under the terms of this Operating Agreement, all parties to this Operating Agreement agree that all such disputes will be referred to binding arbitration pursuant to the Florida Arbitration Act....
 

 The parties had a number of disputes concerning Wagner Square. On October 21, 2008, Redevco and D. Kolsky filed a demand for arbitration against Jackson Square pursuant to the KMT agreement in order to resolve “all disputes.”
 

 Jackson Square subsequently filed a complaint against D. Kolsky, the DSK Trust, A. Kolsky, Redevco, Platinum, Wagner, Wagner I, and KMT.
 
 [1]
 
 The process by which Jackson Square became a member of KMT and the Wagner companies forms the basis of the factual allegations in Jackson Square’s complaint. The complaint alleges that in 2007, in order to obtain an infusion of much needed cash into the project, the Kolskys, “for themselves and on behalf of Redevco, the Kol-sky Trust, the Wagner Companies and KMT, represented to Jackson Square that
 
 *968
 
 Jackson Square would be 50/50 partners in all aspects of the Wagner Companies and share fully and equally in all monies generated from” Wagner Square. As a result, Jackson Square purchased a 49.16% interest in the Wagner companies, and a 33.3% interest in .KMT. In general, the gist of Jackson Square’s complaint is that the Kolskys, on behalf of all of the defendants, have failed to treat Jackson Square as an equal partner in the Wagner Square project in violation of the parties’ oral agreement. The complaint also alleges that they conspired to withhold the fact of the Wagner companies’ contract with Platinum from Jackson Square prior to its becoming a member of the Wagner companies and KMT. In response, D. Kolsky, A. Kolsky, Redevco, the DSK Trust, and Platinum, moved to compel arbitration, arguing that Jackson Square’s claims relate to KMT’s management of the Wagner companies and therefore fall within the scope of the arbitration clause in the KMT agreement. The appellants also argue that by alleging concerted conduct among the signatory and non-signatories to the KMT agreement, Jackson Square is estopped to avoid arbitration of the dispute.
 
 [2]
 

 On February 3, 2009, the court entered an order denying the motion to compel arbitration. This appeal follows.
 

 II.
 
 ANALYSIS
 

 We review an order denying a motion to compel arbitration
 
 de novo. See Roth v. Cohen,
 
 941 So.2d 496 (Fla. 3d DCA 2006);
 
 Murphy v. Courtesy Ford, LLC,
 
 944 So.2d 1131 (Fla. 3d DCA 2006);
 
 accord Briceño v. Sprint Spectrum, L.P.,
 
 911 So.2d 176 (Fla. 3d DCA 2005).
 

 The appellants contend that the trial court erred in denying the motion to compel arbitration. First, the appellants argue that the claims against D. Kolsky are covered by the arbitration clause, and therefore, D. Kolsky, as a signatory to the KMT agreement, may compel Jackson Square, as the other signatory, to arbitration. Second, the appellants assert that the non-signatories to the KMT agreement — that is, A. Kolsky, Redevco, the DSK Trust, and Platinum — may invoke the clause against Jackson Square based on the doctrine of equitable estoppel.
 

 Jackson Square responds that the KMT agreement is not at issue in this case; instead, the Wagner and Wagner I operating agreements, which do not contain arbitration clauses, control. Because the Wagner and Wagner I operating agreements each contain provisions limiting the powers of its manager, Jackson Square claims that there is no nexus between the claims at issue and the KMT agreement. Additionally, Jackson Square claims that the non-signatories cannot compel arbitration.
 

 “Under both federal statutory provisions and Florida’s arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.”
 
 Seifert v. U.S. Home Corp.,
 
 750 So.2d 633, 636 (Fla.1999) (citation omitted).
 
 See also Xerox Corp. v. Smartech Document Mgmt., Inc.,
 
 979 So.2d 957 (Fla. 3d DCA 2007);
 
 Roth,
 
 941 So.2d at 499. As we explained in
 
 Roth,
 
 “not every dispute that arises between contracting parties will be subject to arbitration, nor is the mere fact that a dispute would not have arisen but for the contract sufficient
 
 *969
 
 to compel arbitration of the dispute.” 941 So.2d at 499. In order for a claim to be submitted to arbitration, “it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself’ and there must be some nexus between the claim and the contract containing the arbitration clause.
 
 Seifert,
 
 750 So.2d at 638. All questions concerning the scope of an arbitration clause should be resolved in favor of arbitration.
 
 Zager Plumbing, Inc. v. JPI Nat'l Constr., Inc.,
 
 785 So.2d 660 (Fla. 3d DCA 2001).
 

 Additionally, when an arbitrable issue exists, a non-signatory may compel a signatory to arbitration based on the doctrine of equitable estoppel. Application of the doctrine of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.
 
 MS Dealer Serv. Corp. v. Franklin, 177
 
 F.3d 942, 947 (11th Cir.1999) (concluding that where plaintiff signatory claimed that non-signatory and signatory defendants colluded to defraud her in connection with the purchase of a service contract and to excessively charge her, the claims were based on the same facts and were inherently inseparable such that equitable estoppel applied to compel arbitration);
 
 accord Armas v. Prudential Secs., Inc.,
 
 842 So.2d 210, 212 (Fla. 3d DCA 2003) (finding that where signatory’s claims against non-signatory “arise out of the same factual allegations of concerted conduct by both the non-signatory ... and the signatories ... equitable estoppel is warranted”).
 
 See also Becker v. Davis,
 
 491 F.3d 1292 (11th Cir.2007);
 
 McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,
 
 741 F.2d 342 (11th Cir.1984);
 
 Xerox Corp.,
 
 979 So.2d at 957.
 

 Based upon our review of the relevant documents, we find that there is a sufficient nexus between Jackson Square’s claims against D. Kolsky and the KMT agreement such that the arbitration clause applies and is enforceable between the parties. Here, the KMT agreement provides that “[i]n the event any disputes arise between the Members ... all parties to this Operating Agreement agree that all such disputes will be referred to binding arbitration.... ” This provision includes Jackson Square’s claims against D. Kolsky. Jackson Square claims that the Kolskys, on behalf of themselves and all of the defendants, engaged in a fraud to prevent it from receiving an equal share of the profits from Wagner Square by concealing the Platinum contract, which it claims funnels millions of dollars in profits to the Kolskys. All counts against D. Kolsky relate to the alleged fraud concerning the Platinum contract — either as to the concealment of its existence, or, because the profits to the Wagner companies from the contract are not being shared equally. A review of the Wagner and Wagner I operating agreements reveal that those companies operate through their manager, KMT.
 
 [3]
 
 Thus, this issue of the Platinum contract would be a matter for KMT, as the manager of the Wagner companies.
 

 In other words, this dispute between the KMT members, D. Kolsky and Jackson Square, concerning how to manage the
 
 *970
 
 Wagner companies, falls within the scope of the arbitration clause in the KMT agreement. Each count against D. Kolsky arises out of or is related to the parties’ relationship as manager of the Wagner companies under the KMT agreement. D. Kolsky may therefore compel arbitration for the claims alleged against her in the complaint.
 

 Moreover, although the other appellants are non-signatories to the KMT agreement, they may also compel Jackson Square to arbitration. Jackson Square’s complaint alleges a conspiracy among the signatory appellant, D. Kolsky, and the non-signatory appellants:
 

 31. Even though it appeared that Jackson would be treated as an equal partner, Jackson soon learned that the Defendants had no intention of treating Jackson as a true 50/50 partner, and had in fact conspired to defraud Jackson out of an equal share of the monies from the project by withholding vital information from Jackson prior to the execution of the March 13, 2007 transactions.
 

 31. Specifically, the Kolskys, acting for themselves and the Defendants withheld from Jackson the fact that in 2003, Wagner had entered into an Exclusive Management and Leasing Agreement with Platinum (“Exclusive Least Agreement”) ... for the exclusive lease rights for the commercial building space in the development Project.
 

 ⅝ ⅜ ⅜ ⅜
 

 32. This fraud was perpetrated by all of the Defendants, but orchestrated by the Kolskys.
 

 It is clear that Jackson Square has raised “allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.”
 
 MS Dealer,
 
 177 F.3d at 947. Each of Jackson Square’s claims against the non-signatory appellants arise out of the same allegations of concerted conduct among the non-signatory appellants and D. Kolsky, are based on the same facts, and are inherently inseparable. Accordingly, equitable estoppel is warranted, and A. Kolsky, Redevco, the DSK Trust, and Platinum may compel arbitration for the claims alleged against them in the complaint.
 

 Because we conclude that the trial court erred in denying the motion to compel arbitration, the order is reversed, and the cause remanded to the trial court with instructions to grant the motion to compel arbitration of all claims alleged against D. Kolsky, A. Kolsky, the DSK Trust, Redev-co, and Platinum.
 

 Affirmed in part; reversed in part with directions.
 

 [1]
 

 . The complaint contained twelve counts: breach of contract against the DSK Trust and Redevco (Count I); breach of duty of good faith and fair dealing against the DSK Trust and Redevco (Count II); fraudulent inducement against the Kolskys, the DSK Trust, Redevco, the Wagner companies, and KMT (Count III); conspiracy to defraud against all defendants (Count IV); breach of fiduciary and statutory duties against D. Kolsky, the DSK Trust, Redevco, the Wagner companies and KMT (Count V); breach of contract against KMT (Count VI); injunctive relief against all defendants (Count VII); declaratory relief against all defendants (Count VIII); unjust enrichment against all defendants (Count IX); accounting against the Wagner companies and KMT (Count X); judicial dissolution and partition against the Wagner companies and KMT (Count XI); and appointment of a receiver against the DSK Trust, Redevco, KMT and the Wagner companies (Count XII).
 

 [2]
 

 . The Wagner companies and KMT did not respond to the complaint and are not parties to this appeal.
 

 [3]
 

 . Sections 6.1 and 6.3 of the Wagner operating agreement and section 6.3 of the Wagner I operating agreement state that the manager is responsible for the general overall supervision of the company's business and affairs and is granted broad powers. Specifically, section 6.5(c) of the Wagner operating agreement and 6.3(h) of the Wagner I operating agreement gives the manager full and exclusive power to enter into any transaction with persons and entities in which a member owns any kind of economic interest.