76 So.3d 998 (2011)
MARSHALL, AMAYA & ANTON, etc., et al., Appellants,
v.
Karin ARNOLD-DOBAL, D.O., Appellee.
No. 3D10-1939.
District Court of Appeal of Florida, Third District.
November 30, 2011.
Genovese Joblove & Battista, and Richard Sarafan, Miami, for appellants.
Robert H. Fernandez, for appellee.
Before RAMIREZ, LAGOA, and EMAS, JJ.
PER CURIAM.
This is an appeal from an order denying appellants Marshall, Amaya & Anton, etc., *999 et al.'s, motion to compel arbitration based on an arbitration clause contained in an Employment Agreement, the validity and enforceability of which the appellants simultaneously challenge. The case law supports the appellants' argument that unless there is a challenge to the arbitration provision which is separate and distinct from any challenge to the underlying contract, the case should be submitted to arbitration. See Teledyne, Inc. v. Kone Corp., 892 F.2d 1404 (9th Cir.1990) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). We therefore reverse and remand with directions to order arbitration.
RAMIREZ and EMAS, JJ., concur.
EMAS, J., concurring.
I concur that reversal is warranted, as the trial court erred in denying arbitration under the allegations of the second amended complaint.[1] I write to further explain why arbitration should have been compelled even before the filing of the second amended complaint.
Dobal filed a complaint against Marshall Amaya and others, alleging that Dobal was employed by Damus, Ecker, Rosenthal and Marshall, M.D., P.A., ("Damus Ecker") in 1997 pursuant to a written employment agreement ("the Employment Agreement"). Dobal attached the Employment Agreement to the complaint and alleged that, at the time she entered into the Employment Agreement, Damus Ecker orally promised Dobal a multi-year partnership agreement ("Oral Partnership Agreement"). Dobal alleged it was further agreed that this partnership would be accomplished by a written addendum to the Employment Agreement. In 2009, when no partnership materialized for Dobal, she left her employment and filed suit. Her initial complaint alleged that Marshall Amaya was sued as the "successor entity" to Damus Ecker, and that Marshall Amaya assumed the responsibilities and liabilities under the Employment Agreement. Dobal asserted causes of action for, inter alia, breach of the Employment Agreement.
Marshall Amaya filed a motion to dismiss, raising various defenses, including a statute of frauds defense to the Oral Partnership Agreement. The motion to dismiss also asserted that Dobal was required to arbitrate her claims pursuant to the arbitration provision in the Employment Agreement.[2] The trial court granted the motion to dismiss and gave Dobal leave to amend her complaint.
An amended complaint was filed and, like the original complaint, also attached, relied upon, and made reference to the terms of, the Employment Agreement. Dobal continued to assert that Marshall Amaya was the successor entity to Damus Ecker and, as such, expressly or impliedly assumed the obligations and liabilities of *1000 Damus Ecker under the original Employment Agreement. Dobal alleged that the oral promise of a multi-year partnership, made at the time of her employment, was intended to be a "partnership addendum" to the original Employment Agreement. Dobal asserted claims against Marshall Amaya for constructive termination and breach of both the Employment Agreement and the Oral Partnership Agreement.[3]
Marshall Amaya moved to dismiss the amended complaint, raising several defenses. As with the initial complaint, Marshall Amaya again sought to compel arbitration under the express terms of the Employment Agreement.
At the hearing on the motion to dismiss the amended complaint, the trial court denied the motion to dismiss, finding that Dobal's amended complaint stated a cause of action. In announcing its decision, the trial court stated:
[B]ased upon the fact that you have alleged that ... your partnership agreement was an addendum to the original [written] agreement, I'm inclined to say, if it cannot stand on its own, meaning if your partnership agreement is not independent and cannot stand on its own, and it is simply an addendum, than I also think that I have to look at this arbitration clause that is in the contract that says that you all need to arbitrate.
. . . .
The only thing that is going to happen is counsel is going to come in, once I have stated you have a cause of action, counsel is going to come in and move to compel arbitration.
. . . .
I'm just telling you what I'm thinking. And if this addendum is part of your cause of action, I think it goes to arbitration, based upon the way it is plead. If it is not, then itI have already stated that you stated a cause of action.
The court entered a written order which provided that "with the exception of the arguments concerning arbitration, [Marshall Amaya's] Motion to Dismiss the Amended Complaint is hereby DENIED." With regard to Marshall Amaya's "arguments concerning arbitration", the trial court stated in its order:
The court is concerned that the current allegations of the Amended Complaint appear based upon an alleged Employment Agreement containing a clear and express provision requiring arbitration of all disputes arising under or relating to such agreement under the rules of the American Arbitration Association; and the Court notes that Defendants, from the outset and consistently thereafter, raised this arbitration provision in their defensive motions.
However, instead of granting Marshall Amaya's motion to compel arbitration,[4] the trial court, in the very same order in which it denied the motion to dismiss the amended complaint, granted Dobal leave to amend the complaint again to avoid being bound by the Employment Agreement's "clear and express provision requiring arbitration."[5] In this regard, the trial court *1001 erred. As this Court held in Roth v. Cohen, 941 So.2d 496, 499 (Fla. 3d DCA 2006): "When considering a motion to compel arbitration, three factors need to be considered: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration was waived." One need look no further than the trial court's order denying the motion to dismiss to conclude that the trial court had considered all three factors and had concluded (absent another attempt to amend the complaint) that arbitration was required. Upon finding that Dobal's amended complaint stated a cause of action (and denying the motion to dismiss the amended complaint), and having determined that there was a valid agreement to arbitrate, an existing arbitrable issue,[6] and no waiver of the right to arbitrate, the trial court should have followed the requirements of section 682.03(1), Florida Statutes, which provides:
A party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with arbitration in accordance with the terms thereof. If the court is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application.
LAGOA, J. (dissenting).
For the following reasons, I respectfully dissent. In 1997, the appellee, plaintiff below, Karin Arnold-Dobal ("Dobal"), entered into an original employment agreement with Damus, Ecker, Rosenthal and Marshall, M.D., P.A. d/b/a Emergency Room Medical Associates ("ERMA"). The employment agreement contained the following arbitration clause:
All claims, disputes and other matters in question between the parties arising out of, or relating to this Agreement, or the breach thereof, shall be decided by three person arbitration in accordance with the rule of the American Arbitration Association unless the parties mutually agree otherwise in writing. (emphasis added)
Although there were multiple restructures of the entity doing business as Emergency Room Medical Associates, it is undisputed that Dobal continued to work as an emergency room physician and received a salary and benefits. The appellants, defendants below, Marshall, Amaya & Anton, P.L., Jorge Amaya, and Xavier Anton, were not signatories to the employment agreement. Only one of the defendants, John Marshall, signed the employment agreement; however, Marshall signed the employment agreement as president of Damus, Ecker, Rosenthal & Marshall, M.D., P.A., and not in his individual capacity.
At all times below, the defendants claimed that they were not parties to the employment agreement and that they could not be bound by its terms. Despite the defendants' claim, and their claim that Dobal was not employed under the employment *1002 agreement, defendants simultaneously asserted that Dobal's claims under her Second Amended Complaint were subject to the arbitration clause in the employment agreement.[7]
Dobal's claims are based on an alleged breach of an offer in 2006 to make Dobal a partner in ERMA in early 2008. Contrary to the concurring opinion's assertion in footnote 1 that there is an "undeniable nexus and inextricable link" between Dobal's claims in the Second Amended Complaint and the 1997 employment agreement, Dobal's allegations regarding the terms of the offer and its breach do not rely on or reference the 1997 employment agreement. Nor does Dobal seek relief under the employment agreement.
Because the claims asserted by Dobal in her Second Amended Complaint do not arise out of or relate to the 1997 employment agreement, the defendants' claim that the trial court erred in failing to grant the motion to compel arbitration is without merit.[8]
"When considering a motion to compel arbitration, three factors need to be considered: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration was waived." Roth, 941 So.2d at 499. In order to compel arbitration, there must be a sufficient nexus between the claim and the contract containing the arbitration clause. Id. (citing Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla. 1999)). As the Florida Supreme Court stated in Seifert, in order for a claim to be considered "arising out of or relating to" a contract, "it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." 750 So.2d at 638. Additionally, the "mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient *1003 by itself to transform a dispute into one `arising out of or relating to' the agreement." Id.
Here, Dobal's claims against Marshall, Amaya & Anton, P.L., Jorge Amaya, Xavier Anton, and John Marshall do not raise issues the resolution of which require "reference to or construction of" the 1997 employment agreement. A review of the factual allegations, paragraphs 18 through 32 (R. 342-347), show that each of Dobal's claims rely upon a partnership offer that began with oral communications by Marshall in 2006, and was later memorialized in e-mail communications dated from February 9, 2008 (Ex. G-P, R. 385-409). Count I in the Second Amended Complaint alleges a breach of contract "arising out of the partnership agreement between Dobal and ERMA to become a partner in ERMA as of February 1, 2008." Specifically, "[a]s memorialized in the e-mails and communications between the parties, ERMA was required by the partnership agreement to make Dobal's partnership effective February 1, 2008." (R. 349) (emphasis added). Dobal's four other counts also assert claims based only upon the e-mails and oral communications: Count II claims breach of implied duty of good faith and fair dealing "by failing to honor and formalize the partnership agreement as promised and agreed upon by the parties in e-mails and other communications" (R. 350); Count III claims fraudulent inducement based upon representations both "orally and in writing that they would make Dobal a partner in ERMA ... as of February 1, 2008"; Count IV for negligent representation and Count V for promissory estoppel both base claims upon representations by ERMA, Marshall, Amaya, and Anton "both orally and in writing that they would make her a partner in ERMA effective February 1, 2008." None of Dobal's claims rely upon or require an interpretation of the employment agreement entered into between Dobal and Damus, Ecker, Rosenthal and Marshall, P.A., and therefore do not "aris[e] out of or relat[e] to" that employment agreement.
The defendants argue that Dobal's claims against them are "inextricably linked" to the employment agreement despite continually claiming below that, although Dobal was undoubtedly providing services for them, they were not parties to the employment agreement. In order to assert this claim, the defendants make much of the fact that Dobal attached the employment agreement as "Exhibit A" to her Second Amended Complaint. However, it is clear that Dobal's reference to the agreement was by way of explaining the factual history of her relationship with the defendants, and, as the Supreme Court stated in Seifert, the fact that the "dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one `arising out of or relating to' the agreement." 750 So.2d at 638.
The defendants also rely upon the fact that in the factual allegations of her Second Amended Complaint Dobal refers to the alleged partnership agreement as being an "addendum" to the employment agreement. However, Exhibit "O" to the Second Amended Complaint, an e-mail from Xavier Anton to Dobal, shows that the "addendum" refers to an addendum to the partners' LLC agreement, not the employment agreement, and indeed even asks Dobal, "Did you sign the old contract or have you always been an Employee at will?"
The majority opinion relies upon two federal cases which stand for the undisputedand inapplicableproposition that a party may simultaneously challenge the existence or enforceability of a contract *1004 and move to enforce an arbitration clause contained in the contract. See Teledyne, Inc. v. Kone Corp., 892 F.2d 1404 (9th Cir.1990); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In those cases, the plaintiff asserted claims that fell within the terms of the contract. In other words, the arbitration clause covered the dispute because the claims concerned the contract. As discussed above, that is not the case here.
Another issue in this case is the fact that the defendants are nonsignatories to the employment agreement. Although nonsignatories generally may not compel a signatory to submit to arbitration, Rolls-Royce PLC v. Royal Caribbean Cruises LTD., 960 So.2d 768, 771 (Fla. 3d DCA 2007), "equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances." MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942 (11th Cir.1999). As explained in MS Dealer:
First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."
177 F.3d at 947 (citations omitted). See also Kolsky v. Jackson Square, LLC, 28 So.3d 965, 969 (Fla. 3d DCA 2010); Rolls-Royce, 960 So.2d at 771; Armas v. Prudential Sec., Inc., 842 So.2d 210 (Fla. 3d DCA 2003); Cuningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc., 776 So.2d 940 (Fla. 3d DCA 2000).
As explained above, Dobal's claims do not "arise out of or relat[e] to" the employment agreement, because their resolution does not require reference to or construction of some portion of the employment agreement. Nor does the Second Amended Complaint raise allegations of substantially interdependent and concerted misconduct by both the nonsignatories and one or more of the signatories to the employment agreement. Although one of the individual defendants, John Marshall, signed the employment agreement, he signed in his representative capacity as president of Damus, Ecker, Rosenthal and Marshall, M.D., P.A., rather than in his individual capacity. See Benaja Props., Inc. v. Murno, P.A., 603 So.2d 548 (Fla. 2d DCA 1992) (where defendant was personally and individually joined as a defendant, he could not be found liable under a contract which he signed specifically as president of appellant company). Thus there are no allegations of concerted misconduct by both nonsignatories and a signatory defendant. Therefore, I believe that the trial court did not err in denying the defendants' motion to compel arbitration. Accordingly, I would affirm.
NOTES
[1] The second amended complaint, like the initial and amended complaints, attached as an exhibit, incorporated into the pleading, and made specific references to, the terms of the Employment Agreement, which is the operative agreement containing the arbitration provision at issue. There is an undeniable nexus and inextricable link between Dobal's claims, as asserted in all iterations of her complaint, and the original Employment Agreement.
[2] The Employment Agreement provided: "All claims, disputes and other matters in question between the parties arising out of, or relating to this Agreement, or the breach thereof, shall be decided by three person arbitration in accordance with the rules of the American Arbitration Association unless the parties mutually agree otherwise in writing. The foregoing agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law."
[3] For example, Dobal's amended complaint alleged: "This is an action for breach of contract arising out of the [Employment] Agreement and the subsequent partnership addendum to the [Employment] Agreement ..."
[4] We have previously held that a "motion to dismiss is, in substance, a simultaneous motion to compel arbitration and a demand for arbitration." Hirschfeld v. Crescent Heights, X, Inc., 707 So.2d 955 (Fla. 3d DCA 1998).
[5] During the hearing, the trial court suggested to Dobal's counsel: "[M]aybe what you want to do is amend it to not have it as an addendum. . . ."
[6] Dobal has (properly) never contested the arbitrability of the issues. Nor could she do so, given the broad language of the arbitration clause in the Employment Agreement. See, e.g., Seifert v. U.S. Home Corp. 750 So.2d 633, 637 (Fla. 1999) (recognizing that adding the phrase "relating to" to the phrase "arising out of" has the effect of broadening the scope of the arbitration clause).
[7] Although the concurring opinion states that the trial court erred in denying arbitration of the Second Amended Complaint, that opinion then goes on to address itself instead to the trial court's April 21, 2010, Order on Motion to Dismiss Amended Complaint, in which the trial court (1) denied the defendants' motion to dismiss, (2) granted Dobal leave to file her Second Amended Complaint, and (3) "defer[red] resolution of the arbitration issue." Respectfully, this is not the order on appeal. The defendants appealed from the trial court's July 7, 2010, Order Denying Defendant's Motion to Compel Arbitration.

The operative pleading before the trial court at the time it considered the defendants' motion to compel arbitration was Dobal's Second Amended Complaint. See Caraffa v. Carnival Corp. 34 So.3d 127, 130 (Fla. 3d DCA 2010) (stating rule that "[p]rior pleadings are superceded by the amendment"); see also Barnes v. Horan, 841 So.2d 472, 475 n. 1 (Fla. 3d DCA 2002). Therefore, to the extent the concurring opinion relies upon the allegations in the amended complaint, rather than the Second Amended Complaint, its conclusion as to whether an arbitrable issue exists is erroneous.
Moreover, if, as the concurring opinion states, the trial court considered all three factors set forth in Roth v. Cohen, 941 So.2d 496, 499 (Fla. 3d DCA 2006), in the April 21 order and determined that arbitration was required, then that order was appealable as a non-final order under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv). The defendants, of course, did not appeal from that order because (1) the trial court made no such consideration and determination, and (2) indeed specifically "defer[red] resolution of the arbitration issue" in the order. (emphasis added). The concurring opinion, therefore, improperly addresses the issues of whether the amended complaint was subject to arbitration and whether the trial court improperly permitted Dobal leave to amend.
[8] We review an order denying a motion to compel arbitration de novo. See Roth, 941 So.2d at 496; Murphy v. Courtesy Ford, LLC, 944 So.2d 1131 (Fla. 3d DCA 2006); accord Briceño v. Sprint Spectrum, L.P., 911 So.2d 176 (Fla. 3d DCA 2005).