LAGOA, J.
(dissenting).
For the following reasons, I respectfully dissent. In 1997, the appellee, plaintiff below, Karin Arnold-Dobal (“Dobal”), entered into an original employment agreement with Damus, Ecker, Rosenthal and Marshall, M.D., P.A. d/b/a Emergency Room Medical Associates (“ERMA”). The employment agreement contained the following arbitration clause:
All claims, disputes and other matters in question between the parties arising out of, or relating to this Agreement, or the breach thereof, shall be decided by three person arbitration in accordance with the rule of the American Arbitration Association unless the parties mutually agree otherwise in writing, (emphasis added)
Although there were multiple restructures of the entity doing business as Emergency Room Medical Associates, it is undisputed that Dobal continued to work as an emergency room physician and received a salary and benefits. The appellants, defendants below, Marshall, Amaya & Anton, P.L., Jorge Amaya, and Xavier Anton, were not signatories to the employment agreement. Only one of the defendants, John Marshall, signed the employment agreement; however, Marshall signed the employment agreement as president of Damus, Ecker, Rosenthal & Marshall, M.D., P.A., and not in his individual capacity.
At all times below, the defendants claimed that they were not parties to the employment agreement and that they could not be bound by its terms. Despite the defendants’ claim, and their claim that Dobal was not employed under the em~ *1002 ployment agreement, defendants simultaneously asserted that Dobal’s claims under her Second Amended Complaint were subject to the arbitration clause in the employment agreement.[7]
Dobal’s claims are based on an alleged breach of an offer in 2006 to make Dobal a partner in ERMA in early 2008. Contrary to the concurring opinion’s assertion in footnote 1 that there is an “undeniable nexus and inextricable link” between Do-bal’s claims in the Second Amended Complaint and the 1997 employment agreement, Dobal’s allegations regarding the terms of the offer and its breach do not rely on or reference the 1997 employment agreement. Nor does Dobal seek relief under the employment agreement.
Because the claims asserted by Dobal in her Second Amended Complaint do not arise out of or relate to the 1997 employment agreement, the defendants’ claim that the trial court erred in failing to grant the motion to compel arbitration is without merit.[8]
“When considering a motion to compel arbitration, three factors need to be considered: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration was waived.” Roth, 941 So.2d at 499. In order to compel arbitration, there must be a sufficient nexus between the claim and the contract containing the arbitration clause. Id. (citing Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla. 1999)). As the Florida Supreme Court stated in Seifert, in order for a claim to be considered “arising out of or relating to” a contract, “it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself.” 750 So.2d at 638. Additionally, the “mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insuffi *1003 cient by itself to transform a dispute into one ‘arising out of or relating to’ the agreement.” Id.
Here, Dobal’s claims against Marshall, Amaya & Anton, P.L., Jorge Amaya, Xavier Anton, and John Marshall do not raise issues the resolution of which require “reference to or construction of’ the 1997 employment agreement. A review of the factual allegations, paragraphs 18 through 82 (R. 342-347), show that each of Dobal’s claims rely upon a partnership offer that began with oral communications by Marshall in 2006, and was later memorialized in e-mail communications dated from February 9, 2008 (Ex. G-P, R. 385^409). Count I in the Second Amended Complaint alleges a breach of contract “arising out of the partnership agreement between Dobal and ERMA to become a partner in ERMA as of February 1, 2008.” Specifically, “[a]s memorialized in the e-mails and communications between the parties, ERMA was required by the partnership agreement to make Dobal’s partnership effective February 1, 2008.” (R. 349) (emphasis added). Dobal’s four other counts also assert claims based only upon the e-mails and oral communications: Count II claims breach of implied duty of good faith and fair dealing “by failing to honor and formalize the partnership agreement as promised and agreed upon by the parties in e-mails and other communications” (R. 350); Count III claims fraudulent inducement based upon representations both “orally and in writing that they would make Dobal a partner in ERMA ... as of February 1, 2008”; Count IV for negligent representation and Count V for promissory estoppel both base claims upon representations by ERMA, Marshall, Amaya, and Anton “both orally and in writing that they would make her a partner in ERMA effective February 1, 2008.” None of Do-bal’s claims rely upon or require an interpretation of the employment agreement entered into between Dobal and Damus, Ecker, Rosenthal and Marshall, P.A., and therefore do not “aris[e] out of or relat[e] to” that employment agreement.
The defendants argue that Dobal’s claims against them are “inextricably linked” to the employment agreement despite continually claiming below that, although Dobal was undoubtedly providing services for them, they were not parties to the employment agreement. In order to assert this claim, the defendants make much of the fact that Dobal attached the employment agreement as “Exhibit A” to her Second Amended Complaint. However, it is clear that Dobal’s reference to the agreement was by way of explaining the factual history of her relationship with the defendants, and, as the Supreme Court stated in Seifert, the fact that the “dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by. itself to transform a dispute into one ‘arising out of or relating to’ the agreement.” 750 So.2d at 638.
The defendants also rely upon the fact that in the factual allegations of her Second Amended Complaint Dobal refers to the alleged partnership agreement as being an “addendum” to the employment agreement. However, Exhibit “O” to the Second Amended Complaint, an e-mail from Xavier Anton to Dobal, shows that the “addendum” refers to an addendum to the partners’ LLC agreement, not the employment agreement, and indeed even asks Dobal, “Did you sign the old contract or have you always been an Employee at will?”
The majority opinion relies upon two federal cases which stand for the undisputed — and inapplicable — proposition that a party may simultaneously challenge the existence or enforceability of a contract *1004 and move to enforce an arbitration clause contained in the contract. See Teledyne, Inc. v. Kone Corp., 892 F.2d 1404 (9th Cir.1990); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). In those cases, the plaintiff asserted claims that fell within the terms of the contract. In other words, the arbitration clause covered the dispute because the claims concerned the contract. As discussed above, that is not the case here.
Another issue in this case is the fact that the defendants are nonsignatories to the employment agreement. Although nonsig-natories generally may not compel a signatory to submit to arbitration, Rolls-Royce PLC v. Royal Caribbean Cruises LTD., 960 So.2d 768, 771 (Fla. 3d DCA 2007), “equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances.” MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942 (11th Cir.1999). As explained in MS Dealer:
First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause “must rely on the terms of the written agreement in asserting [its] claims” against the nonsignatory. When each of a signatory’s claims against a nonsignatory “makes reference to” or “presumes the existence of’ the written agreement, the signatory’s claims “arise[] out of and relatef ] directly to the [written] agreement,” and arbitration is appropriate. Second, “application of equitable estop-pel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.” Otherwise, “the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.”
177 F.3d at 947 (citations omitted). See also Kolsky v. Jackson Square, LLC, 28 So.3d 965, 969 (Fla. 3d DCA 2010); Rolls-Royce, 960 So.2d at 771; Armas v. Prudential Sec., Inc., 842 So.2d 210 (Fla. 3d DCA 2003); Cuningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc., 776 So.2d 940 (Fla. 3d DCA 2000).
As explained above, Dobal’s claims do not “arise out of or relat[e] to” the employment agreement, because their resolution does not require reference to or construction of some portion of the employment agreement. Nor does the Second Amended Complaint raise allegations of substantially interdependent and concerted misconduct by both the nonsignatories and one or more of the signatories to the employment agreement. Although one of the individual defendants, John Marshall, signed the employment agreement, he signed in his representative capacity as president of Damus, Ecker, Rosenthal and Marshall, M.D., P.A., rather than in his individual capacity. See Benaja Props., Inc. v. Murno, P.A., 603 So.2d 548 (Fla. 2d DCA 1992) (where defendant was personally and individually joined as a defendant, he could not be found liable under a contract which he signed specifically as president of appellant company). Thus there are no allegations of concerted misconduct by both nonsignatories and a signatory defendant. Therefore, I believe that the trial court did not err in denying the defendants’ motion to compel arbitration. Accordingly, I would affirm.

. Although the concurring opinion states that the trial court erred in denying arbitration of the Second Amended Complaint, that opinion then goes on to address itself instead to the trial court’s April 21, 2010, Order on Motion to Dismiss Amended Complaint, in which the trial court (1) denied the defendants' motion to dismiss, (2) granted Dobal leave to file her Second Amended Complaint, and (3) "deferred] resolution of the arbitration issue.” Respectfully, this is not the order on appeal. The defendants appealed from the trial court's July 7, 2010, Order Denying Defendant’s Motion to Compel Arbitration.
The operative pleading before the trial court at the time it considered the defendants' motion to compel arbitration was Dobal’s Second Amended Complaint. See Caraffa v. Carnival Corp. 34 So.3d 127, 130 (Fla. 3d DCA 2010) (stating rule that "[p]rior pleadings are superceded by the amendment”); see also Barnes v. Horan, 841 So.2d 472, 475 n. 1 (Fla. 3d DCA 2002). Therefore, to the extent the concurring opinion relies upon the allegations in the amended complaint, rather than the Second Amended Complaint, its conclusion as to whether an arbitrable issue exists is erroneous.
Moreover, if, as the concurring opinion states, the trial court considered all three factors set forth in Roth v. Cohen, 941 So.2d 496, 499 (Fla. 3d DCA 2006), in the April 21 order and determined that arbitration was required, then that order was appealable as a non-final order under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv). The defendants, of course, did not appeal from that order because (1) the trial court made no such consideration and determination, and (2) indeed specifically "defer[red] resolution of the arbitration issue” in the order, (emphasis added). The concurring opinion, therefore, improperly addresses the issues of whether the amended complaint was subject to arbitration and whether the trial court improperly permitted Dobal leave to amend.

. We review an order denying a motion to compel arbitration de novo. See Roth, 941 So.2d at 496; Murphy v. Courtesy Ford, LLC, 944 So.2d 1131 (Fla. 3d DCA 2006); accord Briceño v. Sprint Spectrum, L.P., 911 So.2d 176 (Fla. 3d DCA 2005).